792 A.2d 1130

MARYLAND DEPARTMENT OF the ENVIRONMENT

v.

George UNDERWOOD, et al.

No. 48 Sept. Term, 2001.

Court of Appeals of Maryland.

March 5, 2002.

Reconsideration Denied April 8, 2002.

J. Van Lear Dorsey, Asst. Atty. Gen. (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for petitioner/cross–respondents.

John A. Buchanan, LaPlata, for respondents/cross–petitioners.

Argued Before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

HARRELL, Judge.

On 5 February 1998, the Maryland Department of the Environment ("the MDE"), Petitioner, filed suit in the Circuit Court for Charles County against George Underwood and

Carl Breeden, Respondents, seeking reimbursement for expenditures the MDE incurred in removing scrap tires[1] from Respondents' property. The Circuit Court, on 15 December 1999, granted Petitioner's motion for partial summary judgment on the issue of liability, holding that, under Maryland Code (1996 Repl.Vol., 2001 Supp.), Environment Article, § 9–276, Respondents were strictly liable as the property owners of the land at the point in time the MDE took its remedial action. Following a trial on a determination of those expenditures, the Circuit Court assessed damages against Respondents in the amount of $ 1,015,299.72, plus court costs.

On 18 February 2000, Respondents filed an appeal to the Court of Special Appeals. In an unreported opinion, the Court of Special Appeals vacated the judgment of the Circuit Court and remanded the case for further proceedings. According to the Court of Special Appeals, Respondents were entitled to assert equitable defenses at trial and, therefore, the Circuit Court erred in granting summary judgment on liability in favor of Petitioner. We granted Petitioner's petition for writ of certiorari and Respondents' conditional cross-petition, *Maryland Dep't of the Env't v. Underwood, et al.*, 364 Md. 534, 774 A.2d 408 (2001), to consider the following questions:

1. Whether Maryland Code (1996 Repl.Vol., 2001 Supp.), Environment Article, § 9–276 imposes strict liability on a property owner for costs incurred by the Maryland Department of the Environment in removing illegally stored or disposed of scrap tires on that person's property.[2]

---

**1.** A "scrap tire" is defined in Maryland Code, (1996 Repl.Vol., 2001 Supp.), Environment Article, § 9–201(f) as "any tire that no longer is suitable for its original intended purpose by virtue of wear, damage, or defect."

**2.** This question was presented by Petitioner in its brief to this Court. Likewise, Respondents, in their conditional cross-petition for certiorari, inquired, "[d]oes § 9–276 of the Environment[ ] Article impose strict liability on an owner or owners of said property who are not guilty of or responsible for the placement of tires on said property?" Petitioner and Respondents have posed essentially the same question. If, as Petitioner asserts, § 9–276 imposes strict liability on property owners, then, in answer to Respondents' question, it would do so regardless of

2. Whether the Court of Special Appeals erred in concluding a property owner is entitled to assert equitable defenses on his or her behalf under Maryland Code (1996 Repl.Vol., 2001 Supp.), Environment Article, § 9–276.

## I.

### A. Factual Background

On 24 October 1994, Respondents, George Underwood and Carl Breeden, purchased for $6,000 from Ms. Janet Morgan [3] the right to redeem approximately 17 acres of land located in Hughesville, Maryland. On 23 May 1995, after foreclosing the equity of redemption, Respondents acquired the property by deed from Charles County, Maryland. Prior to and at the time of their purchase of the property, Respondents were aware that a scrap tire pile, containing an estimated 720,000

---

culpability, due to its status as a strict liability statute. Therefore, these two questions require us only to determine whether § 9–276(a) imposes strict liability.

Any confusion surrounding this question appears fostered by Petitioner's and Respondents' differing interpretations of the Court of Special Appeals's holding regarding § 9–276. Respondents, in their brief to this Court, argue that the Court of Special Appeals "incorrectly determined that [§ 9–276] was an enactment of strict liability as to ... [p]roperty [o]wners who placed no tires on the subject property," but correctly determined that Respondents were entitled to raise equitable defenses at trial. Petitioner, to the contrary, maintains the Court of Special Appeals "rejected the [C]ircuit [C]ourt's conclusion that the Property Owners were strictly liable for the ... cleanup costs," and hence erred in allowing Respondents to assert equitable defenses. As discussed in *infra* note 11, we have interpreted the decision of the Court of Special Appeals as holding Respondents were entitled to assert equitable defenses because § 9–276 does *not* impose strict liability on property owners for cleanup costs. Based on that interpretation, Respondents' argument misstates the holding of the Court of Special Appeals regarding strict liability. Notwithstanding that confusion, we will answer both Petitioner's and Respondents' penultimate question— whether § 9–276 imposes strict liability on property owners for reimbursement of cleanup costs.

**3.** Ms. Morgan purchased the property at a tax sale public auction on 17 May 1994 after the then corporate owner of the property, the Maryland Resource Recovery Center, Inc., declared bankruptcy.

tires, was located on the land.[4]  Respondents, however, had no direct contact with Petitioner, the MDE, regarding the scrap tire pile prior to or at the time of their purchase.[5]

Following the purchase, Petitioner sent a letter to Respondents, dated 4 August 1995, informing them that it had "been conducting an ongoing investigation in regards to the storage of scrap tires at the Site," and that, as a "current property owner," Respondents were "responsible for the removal of improperly stored scrap tires at th[e] Site."[6] The letter requested Respondents "contact the Department to set up a meeting to discuss [their] options for the removal of the scrap tires...." It also indicated that Petitioner had "the authority

---

4.  The record reveals that approximately three years prior to purchasing the property, Respondents learned of the scrap tire pile on the property and unsuccessfully attempted to get themselves hired to remove the tires from the property.  A year and a half later, Respondents visited the tax assessor's office to inquire about the property, again because they were interested in obtaining employment to remove the tires, and learned that Ms. Morgan had purchased the property at a tax sale public auction.  At the time they purchased the right to redeem from Ms. Morgan, Respondents had been told by "someone ... in the tax assessment office" and "people in the neighborhood" that the "state was going to clean [the tires] up."  When they purchased the property, Respondents were under the impression that the property was "worthless" because of the "liability for cleaning up the tires."

5.  There is no evidence that Respondents, either before or after their purchase of the property, caused or allowed any of the scrap tires to be placed on the property.

6.  At the time of Respondents' purchase, Petitioner was attempting to gain access to the property from the prior corporate owner of the land, pursuant to Md.Code (1996 Repl.Vol.), Environment Article, § 9–229, to remove the "massive" scrap tire pile.  Section 9–229 provides, in pertinent part:

(a) *In general.*—Unless the Secretary determines that a removal and remedial action will be done properly and in a timely manner by the owner or operator of a site where used tires are stored or disposed of, if used tires are stored or disposed of at a site in a manner that may present a threat to the public health or environment, the Secretary may:

(1) Act to remove or arrange for the removal of the used tires and provide for remedial action necessary to restore any natural resources; or

(2) Take any other response measure that the Secretary considers necessary to protect the public health or welfare or the environment.
....

to conduct the cleanup" if Respondents did not "intend to proceed with a removal action in the very near future," and informed Respondents that they would remain liable for all costs associated with that cleanup.

On 15 August 1995, representatives of Petitioner met with Respondents to determine if Respondents would grant Petitioner access to the property to remove the scrap tires. At that time, Respondents refused to grant Petitioner access because they wanted "to confer with [their] attorney about it." On 29 September 1995, after receiving no communication from Respondents, Petitioner sent a letter to Respondents informing them that it was filing a complaint "to obtain access to the Site." The letter also provided that the complaint could "be resolved by [Respondents] granting the Department access to conduct the necessary removal or remedial action." Upon receipt of that letter, Respondents, on 2 October 1995, granted Petitioner access to the property "for the purpose of taking any and all actions necessary for the removal of [the] scrap tires that [we]re stored there," but did not "admit liability for the expenses associated with" that removal.

After receiving access to the property, Petitioner contracted with the Maryland Environmental Service ("the MES") to remove the scrap tires. The MES and its subcontractors completed the scrap tire removal and remediation of the land on or about 10 September 1996. On 21 November 1997, Petitioner sent a letter to Respondents informing them that "[p]ursuant to § 9–276 of the Environment Article" they were "required to reimburse the Department for all costs associated with the removal" of the tires.[7] The letter requested Respon-

---

7. Section 9–276 provides, in relevant part:

(a) *In general.*—Except as provided in subsection (d) of this section, all expenditures from the State Used Tire Cleanup and Recycling Fund made by the Department under § 9–275(a)(1) of this subtitle in response to the storage or disposal of used tires at a particular site shall be reimbursed to the Department for the State Used Tire Cleanup and Recycling Fund by the owner or operator of the site or any other person who caused the tires to be stored or disposed of at the site in violation of this subtitle.

dents contact Petitioner within fifteen days "to discuss [their] reimbursement plans" for the $1,004,453 expended in the scrap tire cleanup. Respondents refused this request and took no action to reimburse Petitioner for the cleanup costs.

## B. Procedural History

On 5 February 1998, Petitioner filed a complaint against Respondents in the Circuit Court for Charles County "seeking recovery of money expended to cleanup and remediate" the scrap tire pile located on Respondents' property. The complaint alleged that "[a]s [Respondents] are the owners of the Site in question, they are liable," under § 9–276, "for all expenditures including legal fees and costs from the State Used Tire Cleanup and Recycling Fund for the storage, removal and restoration or remedial action of the scrap tires from the Site." In their answers to Petitioner's complaint, filed on 1 June 1998 and 23 December 1998, both Respondents denied the claims asserted by Petitioner and demanded a trial by jury. Petitioner, in response to those answers, filed a motion to strike demand for jury trial, maintaining "[t]he relief sought . . . is reimbursement, which is equitable in nature and does not give rise to a jury trial." The Circuit Court struck the jury prayer.

In addition, Respondents, on 20 April 1999, filed a motion for summary judgment arguing they were entitled to judgment as a matter of law because they "did not cause the tires to be stored" on the property. Petitioner also filed a motion for partial summary judgment maintaining that Respondents, as "the owners of the site, [we]re liable to [Petitioner] for the costs incurred in the clean up of the scrap tires" under § 9–276. Therefore, Petitioner argued, it should be "awarded Summary Judgment on the issue of liability as a matter of law."

On 15 December 1999, the Circuit Court denied Respondents' motion and granted Petitioner's motion. In its Opinion

----

. . . .

and Order regarding these rulings, the Circuit Court considered the language and legislative history of § 9–276 and held the statute imposed strict liability on Respondents. In so doing, the Circuit Court rejected Respondents' interpretation of the statute making "responsibility or fault ... an element of the reimbursement requirement." It read the language of § 9–276, which provides that reimbursement be made to the MDE "by the owner or operator of the site or any other person who caused the tires to be stored or disposed of at the site ...," as placing liability on an owner or operator regardless of culpability. . According to the Circuit Court, "the phrase 'any other person who caused the tires to be stored or disposed of at the site' should be read as a stand alone clause, thereby creating an additional category of liable persons distinct from the owner or operator of the site."

Subsequently, a trial on a determination of costs was held. Respondents again argued that their case was one "at law," rather than "at equity," and that they were entitled to a trial by jury. Alternatively, Respondents maintained that, if their case was "at equity," they were entitled to raise equitable defenses.[8] The Circuit Court, however, did not agree with Respondents. It denied Respondents' motion to reconsider the striking of the jury prayer and agreed with Petitioner that the equitable defense of laches could not be raised against the State.[9] Thereafter, on 1 February 2000, the Circuit Court

8. Respondents wished to assert the equitable defenses of laches and unclean hands.

9. Neither the hearing transcript nor the Opinion and Order of the Circuit Court regarding damages include an explicit holding by the court that Respondents were not entitled to raise any and all equitable defenses, as asserted here by Respondents. Rather, at trial, the Circuit Court replied to Respondents' contention that they were entitled to raise laches as an equitable defense by agreeing with Petitioner that "laches does not apply to the state." The judge noted, "[t]hat is what I was going to say. I don't think it does." At the end of the trial, the presiding judge asked counsel for Respondents, "[w]hich specific equitable defenses are you saying your clients were foreclosed on," and subsequently engaged in a brief dialogue with Respondents' counsel regarding laches and unclean hands. After that exchange, the court did not deny explicitly Respondents' request, rather it expressed an inten-

found Petitioner's costs were "fair and reasonable" and assessed damages against Respondents in the amount of $1,015,299.72, plus court costs.

■ On appeal to the Court of Special Appeals, Respondents argued the Circuit Court erred in granting partial summary judgment in favor of Petitioner because, by "[u]tilizing the rules of statutory construction to ascertain legislative intent," it is "clear that § 9–276 was not enacted so as to impose strict liability." In an unreported opinion, the Court of Special Appeals explained that the Circuit Court "imposed strict liability without fault, based on its conclusion that the language in § 9–276 is 'essentially similar to the federal statutory language of CERCLA.' " [10] *See generally* 42 U.S.C. § 9607 (1994 & Supp.1999) ("CERCLA § 9607"). According to the Court of Special Appeals, however, tires "do not constitute

---

tion of not allowing Respondents to raise equitable defenses. Furthermore, the Opinion and Order of the Circuit Court assessing damages made no mention of equitable defenses.

**10.** The federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA")

imposes liability on parties designated as responsible for the release of hazardous substances into the air, land, surface water, or groundwater. Under the Act, the federal government may seek an injunction requiring the responsible party to clean up a contaminated site. Alternatively, the government may clean up the site and demand reimbursement for its incurred costs, or it may issue an administrative order requiring the responsible party to perform the clean-up, subject to civil fines for a failure to comply.

*Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 766 n. 2, 625 A.2d 1021, 1025 n. 2 (1993), *petition granted by* 346 Md. 28, 694 A.2d 951 (1997), *remanded by* 355 Md. 566, 735 A.2d 1081 (1999) (citations omitted).

The comparison of § 9–276 to CERCLA § 9607 (the liability for costs provision of the act) was relied upon by both parties in this case. Petitioner has compared § 9–276 to CERCLA § 9607 to aid in interpreting § 9–276 because "both the tire statute and CERCLA are remedial in nature and the language regarding an owner's liability is similar." Respondents have attempted to refute Petitioner's comparison, arguing that CERCLA "is not determinative of the instant case," but, in the alternative, have endeavored to interpret CERCLA § 9607 in their favor, for instance, by suggesting that "equitable concepts do play a part [in defense against] the strict liability of CERCLA."

hazardous materials or hazardous substances as defined in
either federal law [ (CERCLA) ] or Title 7 of the Environment
Article." Therefore, the intermediate appellate court held the
Circuit Court erred in prohibiting Respondents from asserting
equitable defenses and in granting Petitioner's motion for
partial summary judgment. Because Respondents "were enti-
tled to assert whatever equitable defenses [as may be] applica-
ble," the Court of Special Appeals vacated the judgment of the
Circuit Court and remanded the case for further proceed-
ings.[11]

---

**11.** Although it was not explicit in the opinion of the Court of Special
Appeals, it appears the court based its holding that Respondents were
entitled to raise equitable defenses on the notion that § 9–276 does *not*
impose strict liability on property owners for reimbursement. This,
presumably, is the holding the court intended to convey when it
discussed the Circuit Court's comparison of § 9–276 to CERCLA, the
latter of which is generally accepted to impose strict liability, and noted
that tires in and of themselves do not constitute hazardous substances
under CERCLA. This notwithstanding, case law makes clear that
although tires are not categorized inherently as hazardous substances
under CERCLA, *see, e.g., Town of New Windsor v. Tesa Tuck, Inc.*, 935
F.Supp. 300, 305 (1996) ("[C]ourts have found that tires are not
CERCLA hazardous substances."), the toxic components of tires, when
released into the environment, may be deemed hazardous substances
within the meaning of CERCLA. *See Prisco v. New York*, No. 91 Civ.
3990, 1996 WL 596546, *11, 1996 U.S. Dist. LEXIS 14944, *36
(S.D.N.Y. Oct. 16, 1996) ("[T]ires do not qualify as a hazardous sub-
stance under CERCLA without proof that hazardous substances from
the tires contributed to conditions at the site giving rise to CERCLA
liability.") (citing *B.F. Goodrich v. Murtha*, 840 F.Supp. 180, 186, 190
(D.Conn.1993)). *See generally B.F. Goodrich v. Betkoski*, 99 F.3d 505,
516 (2nd Cir.1996) ("In short, it makes no difference that the specific
wastes disposed of ... were not themselves listed as hazardous sub-
stances, because so long as their component parts were listed as
hazardous substances there may be CERCLA liability.").

It should be noted, however, that the Circuit Court's decision regard-
ing the motions for summary judgment was based on the language and
legislative history of § 9–276, not on a comparison of § 9–276 to
CERCLA. The portion of the Circuit Court opinion quoted by the Court
of Special Appeals, specifically that § 9–276 is " 'essentially similar to
the federal statutory language of CERCLA,' " was contained in a sum-
mary of Petitioner's arguments within the Circuit Court opinion. It
was not relied upon or adopted by the Circuit Court in its analysis. The
Circuit Court, however, did compare § 9–276 to CERCLA in its order
assessing damages. Even that comparison was not utilized for pur-
poses of determining whether § 9–276 imposed strict liability. Rather,

## II.

### A.

In reviewing a grant of a summary judgment motion, we are "most often concerned with whether a dispute of material fact exists." *Lippert v. Jung*, 366 Md. 221, 227, 783 A.2d 206, 209 (2001). *See also Grimes v. Kennedy Krieger Inst., Inc.*, 366 Md. 29, 71, 782 A.2d 807, 833 (2001); *Pence v. Norwest Bank, Minn., N.A.*, 363 Md. 267, 278, 768 A.2d 639, 645 (2001); *Matthews v. Howell*, 359 Md. 152, 161, 753 A.2d 69, 73 (2000); *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 92, 747 A.2d 600, 605 (2000); *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 144, 642 A.2d 219, 224 (1994); *Gross v. Sussex, Inc.*, 332 Md. 247, 255, 630 A.2d 1156, 1160 (1993). Where there is no dispute of material fact, however, this Court has stated that the " 'standard of review for a grant of summary judgment is whether the trial court was legally correct.' " *Lippert*, 366 Md. at 227, 783 A.2d at 209 (quoting *Goodwich v. Sinai Hosp. of Balt., Inc.*, 343 Md. 185, 204, 680 A.2d 1067, 1076 (1996)). *See also Grimes*, 366 Md. at 72, 782 A.2d at 833; *Pence*, 363 Md. at 279, 768 A.2d at 645; *J. Roland Dashiell & Sons, Inc.*, 358 Md. at 94, 747 A.2d at 606 (" 'In reviewing the propriety of a summary judgment, it is our responsibility to determine whether there was any issue of fact pertinent to the ruling and, if not, whether the substantive law was correctly applied.... Thus, to be upheld, the summary judgment under review must withstand scrutiny on both its factual and legal foundations.' ") (quoting *Bloomgarden v. Coyer*, 479 F.2d 201, 206–07 (D.C.Cir.1973)) (alteration in original). We review the trial court's legal conclusions in rendering summary judgment *de novo*. *Matthews*, 359 Md. at 162, 753 A.2d at 74 (citing *Green v. H.R. Block, Inc.*, 355 Md. 488, 502, 735 A.2d 1039, 1047 (1999); *Calomiris v. Woods*, 353 Md. 425, 434, 727 A.2d 358, 362 (1999)). In the present case, there are no genuine

---

it was employed to determine whether reimbursement of "costs," under § 9–276, includes both direct and indirect costs.

disputes as to the material facts; therefore, our review is limited to whether the Circuit Court was correct legally in granting Petitioner's partial motion for summary judgment on liability.

Petitioner asserts that § 9–276 imposes strict liability on Respondents, as property owners, for the cleanup costs incurred by the MDE in the removal of the scrap tire site from Respondents' property. Petitioner bases its argument on the plain language of § 9–276, corroborated by the legislative history regarding the statute, and further through a comparison of § 9–276 to CERCLA § 9607. Additionally, Petitioner argues that the Court of Special Appeals "erred when it remanded the case to the circuit court to allow the Property Owners to assert 'applicable' equitable defenses" because, according to Petitioner, "there are no such defenses that can be asserted with respect to § 9–276."

Respondents, on the other hand, maintain the Court of Special Appeals "correctly determined that [they] were entitled to raise equitable defenses as to the claim brought under § 9–276." Respondents argue that "[a]s used in § 9–276, the word 'reimbursed' is analogous to restitution" and that such an action "seeking a return to the status quo . . . constitutes an equitable remedy." Respondents also maintain that the Legislature did not intend § 9–276(a) to "be a strict liability statute" because "innocent owners were not intended to be responsible persons." Therefore, according to Respondents, they were entitled to assert equitable defenses at trial.[12]

---

**12.** Respondents maintain the Court of Special Appeals erred in holding that § 9–276 imposes strict liability, but that it correctly allowed equitable defenses. This suggests that Respondents interpret the intermediate appellate court's holding regarding equitable defenses as being wholly unrelated to the court's holding that § 9–276 imposed strict liability. To the contrary, we interpret the intermediate appellate court's holding allowing equitable defenses as necessarily related to the court's interpretation of § 9–276. Specifically, we find the court allowed equitable defenses *because* it deemed § 9–276 as *not* imposing strict liability. As discussed in *supra* note 2, however, even though Respondents appear to have misstated the holding of the Court of Special Appeals, the critical questions before us remain the same, i.e. whether § 9–276 imposes

We agree with Petitioner that the Circuit Court was legally correct in finding that § 9–276 imposed strict liability on Respondents for the reimbursement of costs for the removal of the scrap tire pile from Respondents' property. We reverse the judgment of the Court of Special Appeals, and hold further that Respondents were not entitled to assert equitable defenses.

### B.

In 1989, the Maryland State Used Tire Cleanup and Recycling Fund, Md.Code (1996 Repl.Vol., 2001 Supp.), Environment Article, §§ 9–273–9–278, was enacted as an emergency bill in response to the "potential catastrophic environmental risk" constituted by the "stockpiling of used tires." *Bill Analysis, House Bill 491,* Reports of the Senate Economic and Environmental Affairs Committee, at 1 (1989). *See also Floor Report on House Bill 491,* Reports of the Senate Economic and Environmental Affairs Committee, at 1(1989). The statutory enactment was designed to provide the MDE "with the statutory authority to regulate th[at] risk on a statewide basis" and to "provide a coordinated effort to cleanup the growing number of stockpiles around the State." *Bill Analysis, House Bill 491,* at 1. It also was intended to "encourage individuals to recycle used tires and [to] rehabilitate sites currently used to store used tires." *Id.* Specifically, the statute provided "financing for the [State Used Tire Cleanup and Recycling] Fund," provided for "the use of the Fund," and provided for "the reimbursement of certain moneys expended from the Fund by certain persons." Chapter 667, Acts of 1989.

Section 9–276, at issue in this case, was included in the original enactment of the State Used Tire Cleanup and Recycling Fund to provide for the "[r]eimbursement of costs." Chapter 667, § 1 of the Acts of 1989. As codified today, it reads:

---

strict liability on Respondents and whether, under § 9–276, Respondents were entitled to assert equitable defenses at trial.

(a) *In general.*—Except as provided in subsection (d) of this section, all expenditures from the State Used Tire Cleanup and Recycling Fund made by the Department under § 9–275(a)(1) of this subtitle in response to the storage or disposal of used tires at a particular site shall be reimbursed to the Department for the State Used Tire Cleanup and Recycling Fund by the owner or operator of the site or any other person who caused the tires to be stored or disposed of at the site in violation of this subtitle.

(b) *Action for failure to make reimbursement.*—In addition to any other legal action authorized by this subtitle, the Attorney General may bring an action to recover costs and interest from any person who fails to make reimbursement as required under subsection (a) of this section.

(c) *Recovery of costs.*—The Department may recover costs incurred by the Department under § 9–275(a)(1) of this subtitle whether or not the discarded tires were disposed of or stored at the site before July 1, 1989.

(d) *Applicability of section.*—This section does not apply to expenditures of $10,000 or less related to removal, restoration, or remedial action in response to the disposal or storage of scrap tires in violation of this subtitle if:

(1) The owner of the site acquired the property containing the scrap tires prior to January 1, 2000 by inheritance or bequest at the death of the transferor; and

(2) The tires were stored or disposed of prior to January 1, 2000.

In the present case, our focus is on the scope of liability imposed by § 9–276(a), which mandates that the "owner or operator of the site or any other person who caused the tires to be stored or disposed of at the site in violation of this subtitle" is responsible to the MDE for reimbursement of cleanup costs.

In their arguments to this Court and in the courts below, Petitioner and Respondents focus on the similarities and differences between § 9–276 and CERCLA § 9607 in an attempt to glean the intended scope of liability under § 9–

276(a). *See supra* note 10 (discussing the reliance of Petitioner and Respondents on CERCLA in interpreting § 9–276). As we have stated, however, the "cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature," *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995) (citing *Fish Mkt. Nominee Corp. v. G.A.A.,* 337 Md. 1, 8, 650 A.2d 705, 708 (1994)), and the " 'primary source of legislative intent is, of course, the language of the statute itself.' " *State v. Pagano,* 341 Md. 129, 133, 669 A.2d 1339, 1340–41 (1996) (quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 73, 517 A.2d 730, 731 (1986)). *See also Oaks,* 339 Md. at 35, 660 A.2d at 429. Therefore, where the words of a statute are "clear and unambiguous, we will give effect to the statute as written," *Oaks,* 339 Md. at 35, 660 A.2d at 429, and will construe it " 'without forced or subtle interpretations designed to extend or limit the scope of its operation.' " *Giant Food, Inc. v. Dept. of Labor,* 356 Md. 180, 189, 738 A.2d 856, 861 (1999) (quoting *Tucker,* 308 Md. at 73, 517 A.2d at 732). In this case, the language of § 9–276 is both clear and unambiguous. Therefore, it is unnecessary for us to look to a comparison of § 9–276 to CERCLA § 9607 in order to ascertain its meaning. *Id.* (" '[W]here statutory provisions are clear and unambiguous, no construction or clarification is needed or permitted . . . .' ") (citation omitted).

Section 9–276(a) imposes liability for reimbursement on the "owner or operator of the site or any other person who caused the tires to be stored or disposed of at the site in violation of this subtitle." Respondents' interpretation of this section would have the clause "who caused the tires to be stored or disposed of at the site in violation of this subtitle" modify all three categories of potential responsible parties described in the statute, i.e. the "owner," the "operator," and "any other person." That interpretation, however, ignores the clear meaning of the structure and relationship of the words as they appear in the statute and does not acknowledge the "generally recognized rule of statutory construction that a qualifying clause ordinarily is confined to the immediately preceding words or phrase—particularly in the absence of a

comma before the qualifying phrase. . . ." *Sullivan v. Dixon,* 280 Md. 444, 451, 373 A.2d 1245, 1249 (1977) (citing *Webb v. City of Baltimore,* 179 Md. 407, 409–10, 19 A.2d 704, 705 (1941)). In consideration of that principle, we are unable to adopt Respondents' interpretation.

■ The language of § 9–276 does not contain commas setting apart the three categories of potential responsible parties and the modifying clause (e.g. "the owner or operator of the site, or any other person, who caused the tires to be stored . . ."), nor does it explicitly apply the modifying clause to all three parties. In the absence of such context, it is clear that the modifying clause "who caused the tires to be stored . . ." was intended to apply *only* to "any other person." Consequently, the language of § 9–276(a) mandates that liability for reimbursement to the MDE may be placed on any of 3 categories of persons who violate the subtitle: (1) an owner of a site containing used tires; (2) an operator of a site containing used tires; or (3) any other person who caused the used tires to be stored or disposed of at the site.[13] We conclude, therefore, that § 9–276(a) imposes strict liability on an owner of a used tire site for the reimbursement of monies expended in cleaning up the property, regardless of the owner's or operator's culpability in placing or allowing the tires on the property. Had the legislature intended otherwise, it would have indicated as such by clearly setting apart the categories and modifying clause or by explicitly applying the responsibility requirement to all three categories.[14]

---

13. We are not called upon in this case to address what rights Respondents may have to seek contribution or indemnification from any person or entity who also may be liable for remediation of the scrap tire pile.

14. Because the language of § 9–276 is clear, it is not necessary for us to examine the legislative history surrounding the section. *See Maryland Div. of Labor and Indus. v. Triangle Gen. Contractors, Inc.,* 366 Md. 407, 421–22, 784 A.2d 534, 542 (2001) ("When the language of a statute is clear and unambiguous, . . . we normally do not look 'beyond the words of the statute itself to determine legislative intent.' ") (quoting *Giant Food, Inc. v. Dept. of Labor,* 356 Md. 180, 189, 738 A.2d 856, 861 (1999)). We note, however, that, having looked nonetheless, we found

## C.

■ We now must determine whether Respondents were entitled to assert equitable defenses on their own behalf at trial. Petitioner urges us to rely on the body of federal case law interpreting CERCLA § 9607, notwithstanding certain differences between § 9–276 and the federal statute [15], for the

---

no evidence in the legislative history indicating the General Assembly intended to exempt any property owners from responsibility for reimbursement under § 9–276. The legislative file reveals that the General Assembly received testimony prior to the enactment of § 9–276 suggesting the provision be clarified "to give protection to innocent parties," *Testimony of the Rubber Manufacturers Association on House Bill 491 Before the Maryland House of Delegates Committee on Environmental Matters,* at 2 (2 February 1989), but subsequently chose not to modify the language of § 9–276. *See* Chapter 667, § 1 of the Acts of 1989 (indicating no alterations in the pertinent portion of § 9–276(a) between the first and final readings of the bill). In our mind, the legislative determination to maintain the original language of § 9–276 after entertaining the potential application to "innocent parties" clearly indicates that the Legislature intended § 9–276 impose strict liability.

Additionally, a recent amendment to § 9–276 exempts property owners from responsibility for reimbursement of "expenditures of $10,000 or less related to removal, restoration, or remedial action in response to" scrap tires on their land if those owners "acquired the property containing the scrap tires prior to January 1, 2000 by inheritance or bequest ... [,] and ... [t]he tires were stored or disposed of at the site prior to January 1, 2000." *See* Chapter 235, § 2 of the Acts of 2000, codified at Md.Code (1996 Repl.Vol., 2001 Supp.), Environment Article, § 9–276(d). This amendment provides further indication that the Legislature did not intend previously to exclude *all* innocent property owners from liability under § 9–276. If the Legislature had so intended, it would have been unnecessary and redundant in 2000 to amend § 9–276 to provide for the limited exception now contained in the statute.

**15.** Maryland's State Used Tire Cleanup and Recycling Fund, codified at Md.Code (1996 Repl.Vol., 2001 Supp.), Environment Article, §§ 9–273–9–278, and the Comprehensive Environmental Response, Compensation, and Liability Act, codified at 42 U.S.C. §§ 9601–9675 (1994 & Supp.1999), have a number of similarities and differences.

As noted at *supra* page 13, § 9–276 was designed to provide the MDE "with the statutory authority to regulate" the "potential catastrophic environmental risk" posed by the "stockpiling of used tires." *Bill Analysis, House Bill 491,* Reports of the Senate Economic and Environmental Affairs Committee, at 1 (1989). It was intended to "encourage individuals to recycle used tires and [to] rehabilitate" current scrap tire sites, *id.,* and it provided for the reimbursement of cleanup costs from

proposition that Respondents were not entitled to raise equitable defenses at trial. Specifically, Petitioner argues that because a majority of the federal courts have held that equitable defenses are not available under CERCLA § 9607, we should likewise hold those defenses are not available under § 9–276. *See generally Office of the State Prosecutor v. Judicial Watch, Inc.*, 356 Md. 118, 138, 737 A.2d 592, 603 (1999) (" 'Where the purpose and language of a federal statute are substantially the same as that of a later state statute, interpretations of the federal statute are ordinarily persuasive.' ") (quoting *Faulk v. State's Atty. for Harford County*, 299 Md. 493, 506, 474 A.2d 880, 887 (1984)). Although we stop short of complete acceptance of Petitioner's argument due to the differences in language and scope between the two stat-

---

"certain persons." Chapter 667, Acts of 1989. In like manner, CERCLA "gives the federal government broad power to combat contamination of the environment," *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 766 n. 2, 625 A.2d 1021, 1025 n. 2 (1993), *petition granted by* 346 Md. 28, 694 A.2d 951 (1997), *remanded by* 355 Md. 566, 735 A.2d 1081 (1999) (citation omitted), and was designed to

encourage maximum care and responsibility in the handling of hazardous waste; to provide for rapid response to environmental emergencies; to encourage voluntary clean-up of hazardous waste spills; to encourage early reporting of violations of the statute; and to ensure that parties responsible for release of hazardous substances bear the costs of response and costs of damage to natural resources.

*Chem. Waste Mgmt., Inc. v. Armstrong World Indus., Inc.*, 669 F.Supp. 1285, 1290 n. 6 (E.D.Pa.1987). Similar to the language of § 9–276, CERCLA § 9607 also imposes liability for "all costs of removal or remedial action" on, among others, "the owner and operator of a ... facility." § 9607(a).

In contrast to each other, however, CERCLA § 9607 is part of an extensive federal environmental act applying to "hazardous substances," whereas § 9–276 is an element of a more narrowly focused state environmental fund applying only to "used tires." CERCLA § 9607(b) also enumerates defenses available to an otherwise liable party, specifically if "the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by— (1) an act of God; (2) an act of War; (3) an act or omission of a third party . . .; or (4) any combination of the foregoing paragraphs," whereas § 9–276 does not. In fact, § 9–276 provides no defenses or exemptions, beyond the limited category of exempted property owners in § 9–276(d), *see supra* note 14, for responsible parties under the statutory scheme.

utes, an examination of the federal case law surrounding CERCLA § 9607 is useful in our analysis for illustrative purposes. For the reasons stated herein, we agree with Petitioner that Respondents, as liable parties under § 9–276, were not entitled to assert any defenses, including those that are equitable in nature, on their own behalf at trial.

As noted earlier, CERCLA "gives the federal government broad power to combat contamination of the environment." *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.,* 330 Md. 758, 766 n. 2, 625 A.2d 1021, 1025 n. 2 (1993), *petition granted by* 346 Md. 28, 694 A.2d 951 (1997), *remanded by* 355 Md. 566, 735 A.2d 1081 (1999) (citation omitted). To effectuate that end, CERCLA § 9607 imposes strict liability on owners and operators of facilities for the reimbursement of all cleanup costs incurred in responding to hazardous substances on their property. *See* § 9607(a).[16] In addition, it also specifically enumerates defenses available to otherwise liable parties under the statute, including an act of God, an act of War, or an act or omission of a third party. *See* § 9607(b). According to the majority of federal circuits interpreting CERCLA § 9607, otherwise liable parties under the statute are limited to raising *only* those enumerated defenses on their behalf. *See, e.g., Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc., et al.,* 191 F.3d 409, 413 (4th Cir.1999) ("[P]otentially responsible persons . . . are strictly liable for cleanup costs subject only to the statute's limited defenses."); *Westfarm Assocs. Ltd. P'ship. v. Wash. Suburban Sanitary Comm'n,* 66 F.3d 669, 677 (4th

---

**16.** *See also Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc., et al.,* 191 F.3d 409, 413 (4th Cir.1999) ("Those who fall within one of the categories . . . are known as 'potentially responsible persons,' and are strictly liable for cleanup costs. . . ."); *Westfarm Assocs. Ltd. P'ship. v. Wash. Suburban Sanitary Comm'n,* 66 F.3d 669, 677 (4th Cir.1995) ("Potentially responsible parties under CERCLA are strictly liable for cleanup costs. . . ."); *U.S. v. Carolina Transformer Co.,* 978 F.2d 832, 836, *amended by* 978 F.2d 832, 23 Envtl.L.Rep. 20365 (4th Cir.1992) (holding that, under § 9607, "an owner or operator is strictly liable for costs incurred in responding to the release of hazardous substance at the facility"); *U.S. v. Monsanto Co.,* 858 F.2d 160, 167 (4th Cir.1988) ("We agree with the overwhelming body of precedent that has interpreted [§ 9607] as establishing a strict liability scheme.").

Cir.1995) ("Potentially responsible parties ... are strictly liable for cleanup costs, subject *only* to the statute's narrow defenses for damages caused solely by acts of God, war, or third parties.") (emphasis added) (citations omitted); *General Elec. v. Litton Indus. Automation Sys.*, 920 F.2d 1415, 1418 (8th Cir.1990) ("CERCLA is a strict liability statute, with only a limited number of statutorily-defined defenses available."); *U.S. v. Atlas Minerals and Chems., Inc., et al.*, 797 F.Supp. 411, 417 (1992) ("[T]he statute itself is explicit in stating that the defenses enumerated in § 9607(b) are the only defenses to liability under § 9607(a)."). Those parties, therefore, are not entitled to raise any equitable defenses on their behalf. *See, e.g., Town of Munster, Ind. v. Sherwin–Williams Co., Inc.*, 27 F.3d 1268, 1270 (1994) (holding that "CERCLA does not permit equitable defenses to [§ 9607] liability"); *Atlas Minerals and Chems., Inc.*, 797 F.Supp. at 417 ("[The] introduction [of equitable defenses] into the liability phase of a CERCLA case is improper."); *U.S. v. W. Processing Co., Inc.*, 734 F.Supp. 930, 939 (1990) ("The listed defenses are the only defenses which are available to avoid liability.... There should be no other defenses, including equitable defenses, that defeat liability....").

Pertinent to the present case, the mass of federal case law surrounding CERCLA § 9607 and the language of the statute itself elucidate the notion that strictly liable parties generally are *not* entitled to raise any defenses on their behalf, unless such defenses are recognized within the statute itself. Specifically, by expressly enumerating the available defenses in CERCLA § 9607, the drafters of that statute confirmed that all other defenses were not available normally to strictly liable persons. If they were otherwise available, such an enumeration by the legislature would be both unnecessary and superfluous. By logical extension, therefore, it has been demonstrated that in order to raise equitable defenses to rebut statutorily imposed strict liability, such defenses must be explicitly provided for in the statute itself. *See, e.g., U.S. v. DWC Trust Holding Co.*, No. HAR 93–2859, 1994 WL 395730, at *2, 1994 U.S. Dist. LEXIS 10545, at *6 (D.Md. July 22,

1994) (holding that the "absence of any reference to equitable defenses to liability in the statute therefore precludes them"). If they are not provided for in the statute imposing strict liability, then, due to the absolute liability imposed by the statute, they are not available as a defense to liability or damages at trial. *Id.* In our opinion, that rationale is equally applicable to the statute at hand in the present case.

■ Although § 9–276, at the times relevant to the present case, did not enumerate defenses available to strictly liable parties under the statute, their absence does not signify that defenses, specifically equitable defenses, are thus available to otherwise liable parties. Rather, as demonstrated by CERC-LA § 9607, unless the use of equitable defenses is specifically provided for in a strict liability statute, a liable party under that statute is *not* entitled to assert them at trial. In this case, the legislature did not enumerate any defenses to strict liability under § 9–276. Therefore, due to the strict liability imposed on Respondents by § 9–276, they were not entitled to raise any defenses, including those recognized as equitable in nature, on their behalf at trial.

## D.

■ In the courts below, Respondents maintained, as an alternative argument, that they were entitled to a trial by jury in this matter. Essentially, Respondents 'did not care whether they prevailed on their equitable defenses theory or their jury trial argument. To decide the former in their favor, however, necessarily avoided or decided the latter against them, and vice versa. The two arguments were mutually exclusive and, thus, truly asserted in the alternative. Accordingly, because we hold that the Court of Special Appeals erred in ruling in Respondents' favor as to the availability of equitable defenses to the statutory strict liability present in this case, we must extend our analysis to consider the other side of the coin, whether Respondents' views as to a right to a jury trial are in

any way correct.[17]

Petitioner maintained below that "reimbursement," as provided in § 9–276, was "equitable" relief and therefore, "d[id] not give rise to a jury trial." In so doing, Petitioner urged the courts to "turn[ ] to federal case law [regarding CERCLA] to determine the scope of Maryland's jury trial right," and noted that "federal courts have held uniformly that there is no right to a jury trial in an environmental cost recovery action." On the other hand, Respondents argued that the State "can't have it both ways." According to Respondents, the case was "either a law case," hence providing a right to a jury trial, or they "[we]re entitled to raise equit[able] defenses." Although we do not adopt totally Respondents' arguments on this point, for the following reasons we agree that Respondents were entitled to a jury trial on the issue of the appropriate amount of the reimbursement in this case.

In a proceeding initiated by the State to obtain reimbursement for cleanup costs under § 9–276, two determinations must be made, specifically, whether the persons sued come within the classes of persons made liable by the statute and the amount of reimbursement due. On the issue of liability, it is clear that Respondents are not entitled to a jury trial because no disputes of material fact exist on this record. The question remains, however, whether such liable parties are entitled to a jury trial on the issue of the amount of the reimbursement, particularly whether the expenditures for which reimbursement is sought by the State are fair and

---

17. Because we view Respondents' alternative arguments as two-sides of the same coin, it was not necessary for them to preserve it for our consideration by framing it separately in their conditional cross-petition for certiorari. As they were wholly victorious in the Court of Special Appeals on the availability of equitable defenses, it was unnecessary to mention this issue in the conditional cross-petition, given the nature of the alternative arguments in this case. *See Montrose Christian Sch. Corp., et al. v. Walsh,* 363 Md. 565, 577 n. 3, 770 A.2d 111, 118 n. 3 (2001) (" 'It is established as a general principle that only a party aggrieved by a court's judgment may take an appeal and that one may not appeal or cross-appeal from a judgment wholly in his favor.' ") (quoting *Offutt v. Montgomery County Bd. of Educ.,* 285 Md. 557, 564 n. 4, 404 A.2d 281, 285 n. 4 (1979)).

reasonable in light of the purposes of the statute and the particular facts of the case.

■ Article 23 of the Maryland Declaration of Rights provides, "the right of trial by jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of $10,000 shall be inviolably preserved." It is well-established, however, that,

> [t]he constitutional guarantee of a trial by jury extends only to the type of cases in which the right of a trial by jury existed at the time of the adoption of the constitution. In this State there is no right to a jury trial in a court of equity.

*Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.*, 283 Md. 296, 320, 389 A.2d 887, 901 (1978) (citations omitted). *See also Calabi v. Gov't. Em'ees. Ins. Co.*, 353 Md. 649, 657, 728 A.2d 206 (1999) (quoting *Impala Platinum Ltd.*). Therefore, our determination here depends on whether an action for reimbursement under § 9–276 is deemed an action at law for money damages or is equitable in nature.

Section 9–276(a) requires that "[a]ll expenditures from the State Used Tire Cleanup and Recycling Fund" made "in response to the storage or disposal of used tires at a particular site" be reimbursed "by the owner or operator of the site or any other person who caused the tires to be stored at the site . . . ." Following that subsection, § 9–276(b) provides,

> *Action for failure to make reimbursement.*—In addition to any other legal action authorized by this subtitle, the Attorney General may bring an action to recover costs and interest from any person who fails to make reimbursement as required under subsection (a) of this section.

As we stated in our earlier consideration of § 9–276(a), the "cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature," *Oaks*, 339 Md. at 35, 660 A.2d at 429 (citation omitted), and the " 'primary source of legislative intent is, of course, the language of the statute itself.' " *Pagano*, 341 Md. at 133, 669 A.2d at 1340–41 (citation omitted). Where the language of a statute is "clear

and unambiguous," we give effect "to the statute as written," *Oaks,* 339 Md. at 35, 660 A.2d at 429, and construe it " 'without forced or subtle interpretations designed to extend or limit the scope of its operation.' " *Giant Food, Inc.,* 356 Md. at 189, 738 A.2d at 861 (citation omitted). In this case, based on the established rules of statutory interpretation, it is apparent the Legislature intended § 9–276 afford the State an action *at law* for money.

Section 9–276(b) provides that, "[i]n addition to *any other legal action* authorized ... [,] the Attorney General may bring an action to recover costs and interest from any person who fails to make reimbursement" under subsection (a). (Emphasis added). Based on the plain meaning of these words, this subsection clearly and unambiguously establishes that the State's action to recover costs and interest is a "legal action." By including the word "other" in § 9–276(b), the Legislature established that an action to seek reimbursement under § 9–276 is also a "legal action." If it had not so intended, the Legislature would have omitted the word "other" from the phrase "any other legal action," which might have made construction of § 9–276(b) ambiguous.

Because we are bound to give effect to the " 'entire [statute], neither adding, nor deleting, words,' " *Blundon v. Taylor,* 364 Md. 1, 8, 770 A.2d 658, 662 (2001) (quoting *New Jersey v. Strazzella,* 331 Md. 270, 274–74, 627 A.2d 1055, 1057 (1993)), we must interpret the statute as written. Therefore, upon holding that an action under § 9–276 is a "legal action," we find Respondents necessarily were entitled to a jury trial in the Circuit Court on the issue of the amount of reimbursement.[18]

---

18. Notwithstanding the above statutory interpretation ground for recognizing Respondents' right to a jury trial on the issue of the amount of reimbursement under § 9–276, it is worth noting that we have adopted a similar analytical approach in public nuisance abatement situations. In *Martin v. Howard County,* 349 Md. 469, 488–89, 709 A.2d 125, 135 (1998), we distinguished a complaint seeking "to terminate or reduce the activity" constituting a public nuisance on property with a com-

Accordingly, we conclude that the Circuit Court was legally correct in granting Petitioner's partial motion for summary judgment as to liability because the language of § 9–276 unambiguously imposes strict liability on Respondents for costs incurred in removing scrap tires from their property. Additionally, due to the absence of recognition of any enumerated equitable defenses in § 9–276, we hold that the Court of Special Appeals erred in remanding this case to the Circuit Court to allow Respondents to assert equitable defenses. Finally, based on the language of § 9–276(b), we hold Respondents were entitled to a trial by jury in the Circuit Court as to the amount of reimbursement due the Petitioner.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM IN PART AND REVERSE IN PART THE JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY, AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; PETITIONER AND RESPONDENT TO DIVIDE EVENLY THE COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS.

---

plaint requesting "a court order 'ousting' from the property the person in possession" of it. In so doing, we noted generally that,

> [w]ith respect to actions against defendants who are allegedly engaging in activity constituting a nuisance, the relief sought will determine the nature of the action. If the relief requested is an order requiring the defendant to stop engaging in the activity, the action is equitable. If the plaintiff requests money damages, or if a plaintiff not in possession requests an order ousting a tenant from possession of the property, the actions are legal, and there is a constitutional right to a jury trial.

*Martin*, 349 Md. at 489, 709 A.2d at 136. This rationale is equally applicable to the case at hand. Had Petitioner requested an injunction to compel Respondents to clean up their property, the action would have been equitable and Respondents would not be entitled to a jury trial. Because, however, Petitioner sought money damages as reimbursement for the State performing the cleanup (as the statute permitted), the action is a legal one and Respondents retain their right to a trial by jury as to the amount of the reimbursement.