887 A.2d 1060

**James KANE, Jr. and Realty Development Group, Inc.**

v.

**The BOARD OF APPEALS OF PRINCE GEORGE'S COUNTY, Sitting as the Board of Administrative Appeals.**

**No. 29, Sept. Term, 2005.**

Court of Appeals of Maryland.

Dec. 12, 2005.

Cary J. Hansel (Joseph, Greenwald & Laake, P.A., on brief), Greenbelt, for petitioners.

Bridgette Ann Greer, Assoc. Cty. Atty. (David S. Whitacre, Cty. Atty., on brief), Largo, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

This case concerns the interpretation and application of the Prince George's County Code, Title 17, Subtitle 11 Fire Safety ("County Code").[1] At issue are citations issued by the fire department to a landlord and its management agent, pursuant to § 11–162, for violations of § 11–161.[2] Petitioners (Realty

---

1. All citations and all statutory references, unless otherwise provided, are to the 1999 Prince George's County Code, which was in effect at the time of final administrative action. Any relevant subsequent amendments will be noted.

2. These sections provide:
> "Sec. 11–162. **Service of orders and notices generally.**
> Except as otherwise provided, any order or notice issued pursuant to this Subtitle shall be served upon the *owner, operator, occupant, agent or other person responsible for the condition or violation,* either by personal service or by delivering the same to and leaving it with

Development Group, Inc. and James L. Kane, Jr.) appealed the citations to the Board of Appeals for Prince George's County, sitting as the Board of Administrative Appeals; the Circuit Court for Prince George's County; and the Court of Special Appeals. The Board, the Circuit Court, and the Court of Special Appeals found that the citations were properly issued. Petitioners filed a Petition for Writ of Certiorari on May 3, 2005, and we granted certiorari on June 16, 2005. *Kane v. Bd. of Appeals*, 387 Md. 465, 875 A.2d 769 (2005). Petitioners present three questions for our review:

"A) [W]hether the plain language of the Prince George's County Code precludes issuing Correction Orders to and otherwise penalizing the owners of the leased premises for the conduct of their renters involving the renters' personal property;

"B) whether the County Fire Code, as applied in this case, violates the Petitioners' rights to due process; and

---

some person of responsibility upon the premises, or by affixing a copy thereof in a conspicuous place at or near the entrance to such premises, or by mailing a copy thereof to such person by registered or certified mail to the last known address with return receipt requested." (Emphasis added.)

"**Sec. 11–161. Orders to abate dangerous conditions.**

(a) Ordering dangerous materials or conditions removed. Whenever the Fire Chief or his authorized representative shall find any building or other structure which, for want of repairs, lacks sufficient fire escapes, automatic or other fire alarm apparatus or fire suppression equipment or, by reason of age or dilapidated conditions or from any other cause, is liable to fire so as to endanger other property or the occupants thereof, and, whenever he shall find in any building combustible or explosive matter or flammable conditions dangerous to the safety of such building or the occupants thereof, he shall order such dangerous conditions or materials to be remedied or removed immediately. Such conditions or materials shall include, but are not limited to:

(1) Dangerous conditions which are liable to cause or contribute to the spread of fire in or on said premises, building, or structure, or endanger the occupants thereof; ...

(3) Obstruction to or on fire escapes, stairs, passageways, exit ways, doors, or windows liable to interfere with the egress of occupants or the operations of the Fire Department in case of fire; [or] ...

(6) Dangerous accumulations of rubbish, waste, paper, boxes, shavings, or other combustible materials; ..."

"C) whether the County Fire Code, as applied in this case, violates the Petitioners' rights to equal protection under the law."

We hold that the plain language of the County Code allows the fire department to issue citations solely to the owners of the properties. Furthermore, we hold that the County Code sections in question, as applied here, did not violate the petitioners' rights to due process or equal protection.

## I. Facts and Procedural History

Realty Development Group, Inc., ("RDG"), owns three rental properties located at 4204, 4205, and 4206 Knox Road, College Park, Maryland. James L. Kane, Jr., an agent of RDG, manages the properties (Mr. Kane is sometimes hereafter referred to as petitioner). As required by the County Code, the Prince George's County Fire Department conducts regular inspections of the properties.[3]

On March 30, 2000, Captain Steven Hess, a fire department employee, inspected the buildings. The tenant of unit 7, at 4204 Knox Road, allowed Captain Hess to inspect the apartment. Captain Hess determined that the unit was unsafe and later stated:

"The dangerous accumulations of trash and rubbish that I observed during my inspection was such that there was approximately a three foot pile high [of] newspaper, magazines, pizza boxes, other food type containers strewn throughout this [tenant's] unit to the point that he could open his door approximately a foot and a half to allow us

---

3. Section 13-181 of the County Code prohibits the rental of any residential unit without a license. In order to obtain and maintain a license to rent, under § 13-181, a landlord is subject to inspections as provided by § 11-159(b):

"Sec. 11-159. Inspections.

(b) Implied consent. *Any application for or acceptance of any permit or license* requested or issued pursuant to this Subtitle, *constitutes agreement and consent* by the person making application or accepting the permit *to allow fire officials* to enter the premises *to conduct such inspections* as required to enforce this Subtitle." (Emphasis added.)

entry to check the smoke detector, and in the event that [the tenant is] in his room and there is a fire in his unit the likelihood is that not only will the abundant accumulation of this combustible material not allow him to exit his unit properly, it will probably facilitate the fire to spread more quickly. I found that to be a dangerous accumulation not only for him but also for the tenants that reside in that building."

Captain Hess found that the conditions of the apartment violated § 11–161(a)(1). He also found that a room in 4205 Knox Road, used by a tenant as a storage closet, also contained the building's boiler and water heater. Captain Hess determined that the tenant's use of the storage room was a violation of § 11–161(a)(1) as it created "[d]angerous conditions which are liable to cause or contribute to the spread of fire in or on said premises, building, or structure, or endanger the occupants thereof." As a result of these findings, Captain Hess issued a "Correction Order," pursuant to § 11–161. The order named James L. Kane as the owner and it stated that:

"All storage rooms must be locked, supervised by fire sprinklers or be 100% empty and have a smoke detector. In addition, access must be provided to officials of the Prince George's County Fire/EMS Department to inspect these common areas of the property for hazards or appliances as the Fire Chief or his authorized representative may designate.

"The tenant in 4204 Knox Road # 7 must immediately clean all trash and debris from the unit in order to eliminate the dangerous conditions found in the room."

The form stated that both conditions were cited pursuant to § 11–161(a)(1). The order also provided that it was the "1st Notice" and that "the owner/manager must act immediately to correct the listed issues, prior to the next scheduled appointment," which was set for May 1, 2000. Captain Hess gave the order to a rental manager who refused to sign, acknowledging

receipt of it.[4]

After his second visit on May 1, 2000, Captain Hess issued a "2nd Notice" to Mr. Kane stating that the conditions described on the first notice had not been corrected. In addition, this notice stated that "[f]ailure to comply could result in a $1000.00 fine and/or 180 days in jail upon conviction"[5] and that the next scheduled appointment would take place on May 17, 2000. The manager again refused to sign the order. Finally, after inspecting the buildings a third time, Captain Hess issued a "THIRD and FINAL notice" on June 12, 2000. The final notice provided that the conditions found in the previous two occasions had not been corrected.[6] Captain Hess gave the notice to Mr. Kane who refused to sign it.

---

4. There appear to be two rental managers. Mr. Kane and a woman, who according to Captain Hess, told him that she had been directed not to speak to him and refused to sign the correction order.

5. Section 11–114. Criminal penalty for violations provides:
 "A violation of any provision of this Subtitle shall constitute a misdemeanor and any person, upon conviction thereof, shall be fined not less than *One Hundred Dollars ($100) and not more than One Thousand Dollars ($1,000), or sentenced to not more than six (6) months in jail, or both.* Each day that such violation continues shall be deemed a separate offense." (Emphasis added.)
 In addition, § 11–161(h) relating to correction orders states:
 "Failure to obey order. After any order of the Fire Chief or his authorized representative or the Board of Appeals made pursuant to this Section shall have become final, no person to whom any such order is directed shall fail, neglect, or refuse to obey any such order. Any such person who fails to comply with any such order is guilty of a misdemeanor."

6. Petitioners complain that this third notice provided that the deficiencies violated § 11–161(a)(6) as opposed to (a)(1) as stated in the previous two occasions. Petitioners argue that this discrepancy denied them proper notice and violated their due process rights. This argument lacks merit. First, § 11–161(a) requires that the Fire Chief order the removal of dangerous materials or conditions which "include, but are not limited to" those listed in sections (1) through (12). As a result, all the conditions are included in such citations.
 Second, section (1) provides: "Dangerous conditions which are liable to cause or contribute to the spread of fire in or on said premises, building, or structure, or endanger the occupants thereof." Section (6) provides: "Dangerous accumulations of rubbish, waste, paper, boxes, shavings, or other combustible materials." Both sections provide for

Petitioner Kane filed a notice of appeal to the Board of Appeals of Prince George's County (the "Board")[7] on May 10, 2000, challenging the Correction Order dated May 1, 2000. In his notice of appeal, petitioner Kane argued that he was incorrectly identified as the owner, he denied the existence of any storage rooms in the buildings in question, and stated that "[a]ny recommendation to a tenant in any building (4204 Knox Road, # 7) which concerns that tenant's particular personal habits should be directed to that tenant. Any correction order to a tenant should specifically describe the offending conditions and the alleged violation(s)."

On June 20, 2000, petitioner Kane filed a notice of appeal to the Board, challenging the Correction order dated June 12, 2000. In the notice, petitioner Kane again denied being the owner of the property. He also denied the existence of any storage rooms in the building. He acknowledged, however, the existence of the small room in which the furnace and hot water heater were located, but denied that the tenants had access to the room. He maintained his position that any complaints regarding the leased premises should be addressed to the tenants.

The Board held hearings on petitioners' appeals on June 7 and July 12, 2000. At the hearing on June 7, only petitioner Kane was present and he denied being the owner of the properties. The Board decided to postpone the hearing until the property owners were properly identified, notified and represented. On July 12, satisfied that all parties in interest were properly represented, the Board then conducted a hear-

the removal of items or conditions which may pose a fire hazard. The combination of the previous notices and the close relationship between the two subsections provided sufficient notice to the petitioners as to what they needed to do in order to comply with the requirements of the County Code.

7. The Board of Appeals for Prince George's County is composed of three members appointed by the County Council. The Board sits as either the Board of Administrative Appeals or the Board of Zoning Appeals. When sitting as the Board of Administrative Appeals, the Board hears appeals from the decisions of administrative agencies including, as in this case, the Fire Chief.

ing on the merits of the appeal. Petitioners (both RDG and Mr. Kane) were represented by the same counsel. Petitioners and the County stipulated that they had come to an agreement as to most of the violations for which the petitioners had been cited. Both parties asked for the Board to make a determination on whether the owners and agent of the leased properties alone can be cited for the violations created by the tenants.[8] The Board heard evidence from petitioners including petitioner Kane explaining the situation in 4204 Knox Road # 7:

"That's a single sleeping room. I have no control over it. It's just basically ... a rooming house building. I have no control over, in my view, the tenant so long as the tenant does not disturb other tenants, the tenant[']s matters do not spill over in the common areas, what the tenant does behind that door, as far as I'm concerned, is the tenant's business. Others don't like that then I think they should directly address their concern to the tenant."

The Board heard evidence from the fire department and made the following findings:

"1. James Kane, Jr. has a legal interest in the properties at issue.

"2. The owner of the property located at 4204 Knox Road # 7, College Park, Maryland, is responsible for removing all trash and debris from the unit in order to abate a dangerous condition and bring the unit into compliance with Prince George's County Code Section 11–161(a)(1) and 11–159.

"3. The room in dispute at the premises located at 4205 Knox Road, College Park, Maryland, constitutes a storage room and must be in compliance with Prince George's County Code Sections 11–161(a)(1) and 11–159."

The Board did not assess any fines against the petitioners at that time. Following that decision, petitioners appealed to the Circuit Court for Prince George's County. In the Circuit

---

8. From this point ownership does not appear to have been an issue. The matter of who (or what) owns the premises is not presented in the issues stated in the briefs in this Court.

Court, petitioners argued that the Board's reading of the County Code was erroneous and, as applied, violated the petitioners' rights to due process and equal protection. Finally, petitioners argued that the statute was void for vagueness. On August 13, 2001, the Circuit Court remanded the case to the Board and "ORDERED that given the equal protection concerns raised by the Petitioners, the Board of Appeals of Prince George's County, sitting as the Board of Administrative Appeals shall determine why the tenants were not cited for the violations at issue in this matter."

On remand, the Board held meetings concerning this issue on three different dates October 3, 10, and 24, 2001. Petitioners were not advised of the dates and times of the meetings and were not given an opportunity to be heard. After the October 24 meeting the Board issued an "Order of the Board on Remand from the Circuit Court for Prince George's County, Maryland" stating:

"After reviewing the Order of the Circuit Court, the members of the Board met in executive session with counsel to the Board to discuss the law. At the Board's regular meeting on October 24, 2001, the matter was discussed in open session. The members agreed that this matter involved a rational basis test, versus strict scrutiny, and there was no violation of equal protection in declining to cite the tenants for the violations at issue—landlords have the ability to control their tenants, whether they do or not cannot hinder the local government from fulfilling its duty to protect the citizenry's health, safety and welfare, and it would require a 'Registry of Landlord–Tenant Agreements' to make tenants anywhere near as susceptible to enforcement as landowners are by virtue of the County tax records. Under the law, the decision by the Board to uphold the determinations of the County Fire Inspector withstands an equal protection analysis."

The Board determined that their prior decision met a rational basis inquiry and affirmed the correction orders. The Circuit Court, unsatisfied with the Board's explanation, remanded the case once again with specific instructions to determine why

the tenants were not cited; whether "there is a County policy to charge landlords rather than tenants where, as here, the tenant is equally or more accessible to code enforcement officers than the landlord;" and if such policy did exist explain the rationale behind it. Furthermore, the Circuit Court directed the Board to give petitioners notice of the new hearing and "an opportunity to be heard and participate fully."

■ The Board held a remand hearing on July 17, 2002, in which the Fire Department and petitioners were allowed to present their arguments. Following the hearing, the Board issued a decision answering the Circuit Court's questions, which stated:

"The inspectors in this case are hereby determined, as a matter of credibility, to have cited the properties in question for the legitimate reasons set forth in the violation notice(s), and the landlord was served in good faith inasmuch as the law gives landlords ultimate responsibility for the condition of their real property (including the improvements thereon). As for a 'policy,' this Board finds that there is no 'policy' in terms of the government desiring to impose upon or inconvenience landlords as opposed to tenants; the County's inspectors simply follow the common sense of using the tax records and similar readily-available sources of information to enforce the County Code as efficiently and effectively as possible. (As stated previously in these proceedings, there is no 'tenant registry' readily-available to government employees, so there is no way a government employee can be sure the person answering the door of a rental unit is the actual tenant—conversely, the tax records provide a fairly reliable indication of who the landlord is, and in this case Mr. Kane has not seriously contended that there was error in that regard here with respect to the Knox Road unit(s) in question.)"

The Board then determined:

"In sum, this Board concludes that the landlord/owner was cited rather than the tenant(s) because this method of serving the citation is most likely to cause the corrective

actions to be carried out as directed; to the extent that this manner of serving violation notices is a 'policy,' it comports with all laws, including the equal protection clause. The actions of the inspector(s) are hereby affirmed in all respects, on all grounds." [9]

---

**9.** In support of its finding, the Board stated that under well-settled principles of nuisance law, a landlord is responsible for dangerous conditions created by a tenant. This is not entirely correct. The Board quoted *Owings v. Jones*, 9 Md. 108, 117–18 (1856): "[W]here the owner leases premises which are a nuisance, or must, in the nature of things, become so by their user, and receives rent for them, then, whether in or out of possession, he is liable." This assertion is taken out of context as the entire passage actually states:

> "[W]e understand the court to deduce, at least the two following principles from the numerous adjudications to which reference is had:—*First.* **That where property is demised, and at the time of the demise it is not a nuisance, and becomes so** *only* **by the act of the tenant while in his possession, and injury happen[ed] during such possession, the owner is <u>not liable</u>;** but, *Second.* That where the owner leases premises which are a nuisance, or must in the nature of things become so by their user, and receives rent, then, whether in or out of possession, he is liable."

*Id.* (Bolding and underline added.) There is no evidence that the apartment was a nuisance at the time it was leased to the tenant. It became a nuisance *"only* by the act of the tenant" and, as a result, the landlord would not be liable for any damages caused by it—at least not under this doctrine. *See Matthews v. Amberwood Assocs.*, 351 Md. 544, 556–57, 719 A.2d 119, 125 (1998); *Smith v. Walsh*, 92 Md. 518, 528–29, 48 A. 92, 92–93 (1901).

Under Maryland's landlord tenant common law, "when a landlord *has* turned over control of a leased premises to a tenant, it *ordinarily* has no obligation to maintain the leased premises for the safety of the tenant." *Hemmings v. Pelham Wood Ltd. Liab. Ltd. P'ship*, 375 Md. 522, 537, 826 A.2d 443, 452 (2003) (second emphasis added) (citing *Matthews*, 351 Md. at 556–57, 719 A.2d at 125); *Rhaney v. Univ. of Md. Eastern Shore*, 388 Md. 585, 598, 880 A.2d 357, 364 (2005).

As illustrated in *Matthews*, the Court has recognized that there are exceptions to the principle that the landlord is not obligated to maintain the tenant's premises for the safety of the tenants. The Court cited the following examples: when the "landlord agrees to rectify a dangerous condition in the leased premises, and fails to do so, he may be liable for injuries caused by the condition. *See, e.g., Sacks v. Pleasant*, 253 Md. 40, 44–46, 251 A.2d 858, 861–862 (1969);" when the landlord "voluntarily undertakes to rectify a dangerous or defective condition within the leased premises, and does so negligently, the landlord is liable for resulting injuries. *Miller v. Howard*, 206 Md. 148, 155, 110 A.2d 683, 686, (1955);" when there are *"[d]efective or dangerous conditions in the leased premises which violate statutes or ordinances [that] may also be*

The Circuit Court affirmed the Board's decision, finding that there was a rational basis for the fire department's practice of citing the owner and/or management agent of the building and not the tenants. The Court determined that "[t]he ordinance provides wide discretion for the County to cite whomever it believes would most likely remedy the problem." As a result, "[u]nder the rational basis test so long as the means are reasonable and the ends legitimate, the Court must give deference to the County's decision."

Petitioners appealed to the Court of Special Appeals. That court found that the plain language of the statute allowed the County to cite the landlord. The court also found that the County Code, as applied, met the rational basis inquiry required under the Equal Protection Clause of the United States Constitution and Article 24 of Maryland Declaration of Rights. The Court of Special Appeals determined that the petitioners had the burden of demonstrating that the County Code as applied to them was unconstitutional. The intermediate appellate court found that the petitioners failed to meet that burden, in part, by not introducing a copy of the tenant's lease on the record showing the petitioners' lack of authority over the tenant's actions. The court took judicial notice of the fact that most leases in the state have clauses allowing the landlord to exercise control over the tenants by requiring them to comply with all laws and reserving the landlord's right to enter the premises if he or she has "good cause to believe the Tenant may have damaged the premises or may be in violation

---

the basis for a negligence action against the landlord. See, e.g., Richwind v. Brunson, [335 Md. 661, 671, 645 A.2d 1147, 1152 (1994), overruled on other grounds by Brooks v. Lewin Realty III, Inc., 378 Md. 70, 835 A.2d 616 (2003)]." Matthews, 351 Md. at 555–56, 719 A.2d at 124 (emphasis added).

Our decision today, does not in any way modify the standards for nuisance or negligence actions stated in the common law and the cases cited above. It is limited to allowing the County to cite the landlord for violations of the Code which may have been created by the tenant, albeit tolerated by the landlord. Whether the landlord could be liable for damages to tenants or third parties caused by such conditions is left to the facts of those cases in which the issues may arise.

of county, state, or federal law." The Court of Special Appeals then affirmed the Circuit Court's judgment.

## II. Standard of Review

Judge Harrell, writing for the Court, recently stated: " 'We review an administrative agency's decision under the same statutory standards as the Circuit Court.' " *Annapolis Market Place, L.L.C., v. Parker,* 369 Md. 689, 703, 802 A.2d 1029, 1037 (2002) (quoting *Jordan Towing, Inc. v. Hebbville Auto Repair, Inc.,* 369 Md. 439, 449–52, 800 A.2d 768 (2002)). In *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–69, 729 A.2d 376, 380–81 (1999), Judge Eldridge, writing for the Court, explained the standard of review for administrative agency decisions:

"A court's role in reviewing an administrative agency adjudicatory decision is narrow, *United Parcel v. People's Counsel,* 336 Md. 569, 576, 650 A.2d 226, 230 (1994); it 'is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.' *United Parcel,* 336 Md. at 577, 650 A.2d at 230. *See also* Code (1984, 1995 Repl.Vol.), § 10–222(h) of the State Government Article; *District Council v. Brandywine,* 350 Md. 339, 349, 711 A.2d 1346, 1350–1351 (1998); *Catonsville Nursing v. Loveman,* 349 Md. 560, 568–569, 709 A.2d 749, 753 (1998).

"In applying the substantial evidence test, a reviewing court decides 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.' " *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978). See *Anderson v. Dep't of Public Safety,* 330 Md. 187, 213, 623 A.2d 198, 210 (1993). A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. *CBS v. Comptroller,* 319 Md. 687, 698, 575 A.2d 324, 329 (1990). A reviewing court ' "must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima

facie correct and presumed valid, and ... it is the agency's province to resolve conflicting evidence' and to draw inferences from that evidence." *CBS v. Comptroller, supra,* 319 Md. at 698, 575 A.2d at 329, quoting *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834–835, 490 A.2d 1296, 1301 (1985). *See Catonsville Nursing v. Loveman, supra,* 349 Md. at 569, 709 A.2d at 753 (final agency decisions "are *prima facie* correct and carry with them the presumption of validity").

"Despite some unfortunate language that has crept into a few of our opinions,[10] a 'court's task on review is *not* to "substitute its judgment for the expertise of those persons who constitute the administrative agency," ' *United Parcel v. People's Counsel, supra,* 336 Md. at 576–577, 650 A.2d at 230, quoting *Bulluck v. Pelham Wood Apts., supra,* 283 Md. at 513, 390 A.2d at 1124. Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. *Lussier v. Md. Racing Commission,* 343 Md. 681, 696–697, 684 A.2d 804, 811–812 (1996), and cases there cited; *McCullough v. Wittner,* 314 Md. 602, 612, 552 A.2d 881, 886 (1989) ("The interpretation of a statute by those officials charged with administering the statute is ... entitled to weight").[11] Furthermore, the expertise of the agency in its own field

---

**10.** *"Liberty Nursing v. Department,* 330 Md. 433, 443, 624 A.2d 941, 945–946 (1993); *Caucus v. Maryland Securities,* 320 Md. 313, 324, 577 A.2d 783, 788 (1990); *State Election Bd. v. Billhimer,* 314 Md. 46, 59, 548 A.2d 819, 826 (1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989); *Supervisor v. Asbury Methodist Home,* 313 Md. 614, 626, 547 A.2d 190, 196 (1988)." *Banks,* 354 Md. at 68 n. 1, 729 A.2d at 381 n. 1.

**11.** "On the other hand, when a statutory provision is entirely clear, with no ambiguity whatsoever, 'administrative constructions, no matter how well entrenched, are not given weight.' *Macke Co. v. Comptroller,* 302 Md. 18, 22–23, 485 A.2d 254, 257 (1984)." *Banks,* 354 Md. at 69 n. 2, 729 A.2d at 381 n. 2.

should be respected. *Fogle v. H & G Restaurant,* 337 Md. 441, 455, 654 A.2d 449, 456 (1995); *Christ v. Department of Natural Resources,* 335 Md. 427, 445, 644 A.2d 34, 42 (1994) (legislative delegations of authority to administrative agencies will often include the authority to make "significant discretionary policy determinations"); *Bd. of Ed. For Dorchester Co. v. Hubbard,* 305 Md. 774, 792, 506 A.2d 625, 634 (1986) ("application of the State Board of Education's expertise would clearly be desirable before a court attempts to resolve the legal issues)."

*See also Dep't of Pub. Safety and Corr. Servs. v. Palmer,* 389 Md. 443, 886 A.2d 554 (2005). Using these standards, we now turn to the Prince George's County Board of Appeals' decision.

### III. Discussion

We shall discuss the three specific issues presented: the plain reading of the Prince George's County Code, the validity of the statute as applied under the Due Process Clause and the validity of the actions taken under the Equal Protection Clause of the United States and Maryland Constitutions. First, we note the framework for our discussion.

### A. Statutory Construction–Plain Meaning

 This Court has previously stated that "[l]ocal ordinances and charters are interpreted under the same canons of construction that apply to the interpretation of statutes." *O'Connor v. Balt. County,* 382 Md. 102, 113, 854 A.2d 1191, 1198 (2004). It is also a well settled principle of law that " '[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature,' " in this case the County Council. *Rockwood Cas. Ins. Co. v. Uninsured Employers' Fund,* 385 Md. 99, 108, 867 A.2d 1026, 1031 (2005) (quoting *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995)). For that purpose, "we begin our inquiry with the words of the statute, and, when the words of the statute are clear and unambiguous, according to their commonly under-

stood meaning, we ordinarily end our inquiry there also." *Comptroller of the Treasury v. Kolzig,* 375 Md. 562, 567, 826 A.2d 467, 469 (2003). Finally, this Court must "construe a statute as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Moore v. State,* 388 Md. 446, 453, 879 A.2d 1111, 1115 (2005).

Prince George's County Code § 11–162 provides in pertinent part: "[A]ny order or notice issued pursuant to this Subtitle shall be served upon the *owner,* operator, occupant, agent *or other person responsible*[12] *for the condition or violation . . .*" (emphasis added). Petitioners contend that the plain language of the statute requires the fire department to cite *only* the "other person responsible for the condition or violation," i.e., the tenant. The County, on the other hand, argues that the qualifier "responsible for the condition or violation" only modifies the term "other person" and, as a result, the fire department may cite the "owner" and/or "agent" even if they did not cause the condition or violation. The Circuit Court and later the Court of Special Appeals agreed with the County's interpretation.

The analysis of this statute in respect to "plain meaning" involves a three step process. First, we analyze the effect of the qualifying clause. We continue with an analysis of the punctuation used within the section. Finally, we address the use of the term "other" within that section.

### i. Qualifying Clauses

■ We commence our analysis by utilizing the "generally recognized rule of statutory construction that a qualifying clause ordinarily is confined to the immediately preceding words or phrase—particularly in the absence of a comma before the qualifying clause. . . ." *Sullivan v. Dixon,* 280 Md. 444, 451, 373 A.2d 1245, 1249 (1977); *Annapolis Market Place,* 369 Md. at 707, 802 A.2d at 1040; *Md. Dep't. of Env't. v.*

---

12. Throughout these proceedings the word "responsible" has been read to mean "causes," as in "causes the condition."

*Underwood,* 368 Md. 160, 175, 792 A.2d 1130, 1139 (2002); *Schmerling v. Injured Workers' Ins. Fund,* 368 Md. 434, 452 n. 9, 795 A.2d 715, 725 n. 9 (2002); *but see Employment Sec. Admin. v. Weimer,* 285 Md. 96, 102, 400 A.2d 1101, 1104–05 (1979) (noting that this is not an absolute rule, but an aid to determine the intent of the legislative body enacting the rule).

In *Underwood,* the Court analyzed Md.Code (1982, 1996 Repl.Vol., 2001 Supp.), § 9–276(a) of the Environment Article, which provided that "all expenditures . . . by the Department . . . shall be reimbursed to the Department . . . by the owner or operator of the site or any other person who caused the . . . violation of this subtitle." [13] *Underwood,* 368 Md. at 174, 792 A.2d at 1138. Interpreting the language of the statute, Judge Harrell, writing for the Court, stated:

"Respondents' interpretation of this section would have the clause 'who caused the . . . violation of this subtitle' modify all three categories of potential responsible parties described in the statute, i.e. the 'owner,' the 'operator,' and 'any other person.' That interpretation, however, ignores the clear meaning of the structure and relationship of the words as they appear in the statute. . . ."

*Id.* at 175, 792 A.2d at 1139. More specifically, the Court determined that such interpretation would disregard the rule described in *Sullivan* and require that, in order to be found liable under the statute, the owner or operator must also have caused the violation. The Court then explained:

"The language of § 9–276 does not contain commas setting apart the three categories of potential responsible parties and the modifying clause (e.g. 'the owner or operator of the site, or any other person, who caused the [violation] . . .'), nor does it explicitly apply the modifying clause to all three parties. In the absence of such context, it is clear that the modifying clause 'who caused the [violation] . . .'

---

**13.** The language of § 11–162 of the County Code, which provides that notice "shall be served upon the owner, operator, occupant, agent or other person responsible for the condition," is consistent with the language of § 9–276(a) of the Environmental Article.

was intended to apply *only* to 'any other person.' Consequently, the language of § 9–276(a) mandates that liability for reimbursement to the [Department] may be placed on any of 3 categories of persons who violate the subtitle: (1) an owner of a site [where the violation occurred]; (2) an operator of a site [where the violation occurred]; or (3) any other person who caused the [violation]."

*Id.* at 176, 792 A.2d at 1139.

### ii. Punctuation: the Importance of a Comma

■ Like the statute in *Underwood*, § 11–162 does not contain commas setting apart the clause from the different categories of individuals named in the list. When the qualifying clause is set apart by a comma, it is clear that it modifies every element within the list. For example, the Due Process Clause of the Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty, or property, without due process of law." The comma following the word "property" clearly indicates that the qualifying clause "without due process of law" applies to all three terms: life, liberty, and property.

The Court of Special Appeals recognized that the qualifying clause was not set apart by a comma and was therefore limited to modify only the term "other person." Petitioners, in response, argue that the intermediate court "ignored the comma before 'or,' which comma applies the entire subsequent phrase to 'owner' or 'agent.'" There is no such comma in the statute. Interestingly, however, although—as we indicate—there is no comma after agent in the text of the actual statute, it somehow made it's way into the petitioners' briefs.[14]

---

**14.** Petitioners in their original brief purported to quote from the statute. In that quote a comma appears between the words agent and the "or." In that original brief, the petitioners raised no issue in respect to that mysterious comma. In the respondent's brief, the County even states: "there is a comma immediately after the words 'owner, operator, occupant, agent ...' followed by the words 'or other person....'"

Later, in their reply brief the petitioners, addressing § 11–162, state:

### iii. Meaning of the Word "Other" Under the County Code

█ Petitioners argue that this reading of the County Code renders the word "other" superfluous. In support of their contention they point to *Underwood* as well. In addition to determining who was liable for the violation, the *Underwood* Court also determined that—under the statute—the action to seek reimbursement was a "legal action." Md.Code (1982, 1996 Repl.Vol., 2001 Supp.), § 9–276(b) of the Environment Article provided that "[i]n addition to any *other* legal action authorized by this subtitle, the Attorney General may bring an action to recover costs and interest from any person who fails to make reimbursement as required under subsection (a) of this section." *Underwood,* 368 Md. at 174, 792 A.2d at 1138 (emphasis added). The Court concluded that the use of the word "other," which is modified by the qualifying clause "legal action," indicated that the action to recover costs under that section was a "legal action." *Underwood,* 368 Md. at 184, 792 A.2d at 1144. As a result, petitioners contend that under this interpretation of § 11–162 of the County Code, use of the term "other" indicates that the other persons named in the list must also be responsible for the condition or violation in order to be cited. The use of the words "other" and "legal action" in that

"Specifically, the Prince George's County Fire Code provides that any order or notice issued pursuant to this Subtitle [including the Correctional Orders at issue here] shall be served upon the owner, operator, occupant, agent, or ***other person*** . . . ." [Brackets in original, bolding and underlining of the comma at issue added.]

"The Court of Special Appeals found that the fact that there is no comma before the word 'responsible,' meant that it did not modify 'owner' or 'agent,' such that an owner or agent could be cited even if they were not responsible for the violation. The [petitioners] respectfully submit that this interpretation ignores the comma before 'or,' which comma applies the entire subsequent phrase to 'owner' or 'agent.' "

The Court has obtained copies of the actual statute by fax from Prince George's County, and we have reviewed the County's website and printed a copy of the statute from that site. Additionally, an actual copy of the statute was included in the appendix to the petitioner's original brief.

**There is no comma between "agent" and "or."** We presume that this mysteriously appearing comma came out of nowhere-by mistake.

particular part of *Underwood,* however, related to a different context than that of the present case and offers little support for petitioners' position in the current context.

Petitioners' argument, moreover, fails to reconcile the Court's interpretation, in the *same opinion,* of two *adjacent sections of the same statute* containing the term "other." As described *supra,* the Court limited the effect of the qualifying clause in § 9–276(a) of the Environment Article to "any *other* person," interpreting "other" to exclude the owner or operator of the site. *Underwood,* 368 Md. at 176, 792 A.2d at 1139.[15] Then, the Court interpreted the term "other" in § 9–276(b) of the Environment Article to mean that such action was also a "legal action." *Id.* at 184, 792 A.2d at 1144. These apparent incongruent interpretations can be easily and reasonably explained. Section 9–276(a) of the Environment Article, like § 11–162 of the County Code (the section at issue here in the case at bar), involves a list of persons responsible for a violation of the code. Section 9–276(b) of the Environment Article, on the other hand, does not refer to a list of persons who have violated a statute, but to a type of action similar to that of different sections described in the Code. Furthermore, § 9–276(a) of the Environment Article and § 11–162 of the County Code could have easily been written to include all the

---

**15.** We recognize that the Court has come to a different conclusion in another case. In *Schmerling,* 368 Md. at 451 n. 9, 795 A.2d at 725 n. 9, the Court interpreted a statute stating: "Any telephone or telegraph instrument, equipment or *other* facility *for the transmission of electronic communications.*" The Court stated:

"While the qualifying clause only affects the immediately preceding word, the use of the word 'other' before 'facility' indicates that the 'facility' is *of the same kind as* 'equipment' and 'instrument.' As petitioner points out, it would be nonsensical to use the word 'other' to modify 'facility' if the terms did not have some relation to each other. Therefore, while we agree with the Court of Special Appeals that the prepositional phrase, 'for the transmission of . . .' only modifies 'facility,' we agree with petitioners that the use of the word 'other' connotes a similarity in the types of equipment listed."

*Id.* In the case *sub judice,* restricting the qualifying clause to "other person" does not result in a nonsensical reading of the statute. Furthermore, petitioners' interpretation would render the use of the words owner, operator, occupant, and agent superfluous.

persons of the list by the addition of a comma or an express provision in the statute to that effect.

As petitioners suggest, an interpretation of the statute must not render any word within it superfluous or nugatory. *See Moore*, 388 Md. at 453, 879 A.2d at 1115. The use of the word "other" supports the conclusion that the County Council intended to limit the qualifying clause to those persons, other than the ones in the specific list, responsible for the condition or violation. If the Council had intended that only the persons responsible for the violation were to be cited, then the use of the terms "owner, operator, occupant, agent" would be rendered superfluous. Had that been the intention of the drafters, they could simply have stated: "Notice shall be served upon the person responsible for the condition or violation." Such language, had it been used, might have restricted application of that section to only those persons who caused the condition or violation. But, the statute was not so drafted.

Applying the *Sullivan* standard to the facts of the case *sub judice*, we find—as did the Court of Special Appeals—that the qualifying clause "responsible for the condition or violation" only modifies the term "other person." As a result, there are five separate persons or entities who can be cited under the County Code: (1) the owner, (2) the operator, (3) the occupant, (4) the agent, or (5) "other person responsible for the condition or violation." As a result, the owner, operator, occupant, or agent may be cited even though they may not have caused the condition or violation. We, therefore, affirm the Court of Special Appeals finding that the plain language of § 11–162 allows the fire department to cite the owner and/or managing agent of the property.

## B. Due Process

In interpreting city and county ordinances, this Court has held that "[t]he test for constitutionality under the Due Process Clause is whether a statute, as an exercise of the state's police power, bears a real and substantial relation to the public health, morals, safety, and welfare of the citizens of this state." *Bowie Inn, Inc. v. Bowie*, 274 Md. 230, 236, 335

A.2d 679, 683 (1975); *see also Steuart Petroleum Co. v. Bd. of County Comm'rs,* 276 Md. 435, 446, 347 A.2d 854, 861 (1975); *Md. Bd. of Pharmacy v. Sav–A–Lot, Inc.,* 270 Md. 103, 106, 311 A.2d 242, 244 (1973); *Salisbury Beauty Schs. v. State Bd. of Cosmetologists,* 268 Md. 32, 48, 300 A.2d 367, 377–78 (1973). In addition, the use of the police power "will not be interfered with unless it is shown to be misused or abused, or where it is shown to be exercised arbitrarily, oppressively or unreasonably." *Salisbury Beauty Schs.,* 268 Md. at 48, 300 A.2d at 377; *Steuart Petroleum,* 276 Md. at 446, 347 A.2d at 861.

■■■ This Court has previously addressed the validity of statutes regulating rental properties. In *McBriety v. Baltimore,* 219 Md. 223, 148 A.2d 408 (1959), a Baltimore City ordinance requiring the licensing and registration of rental properties was challenged. The Court's analysis first pointed out that "[t]here is also a presumption that a municipal ordinance is reasonable and for the public good, and the burden of proving the contrary is on those who attack it." *Id.* at 231, 148 A.2d at 414. If there are any reasonable doubts regarding the validity of the ordinance, they are resolved in its favor. *Id.* The Court also stated that this presumption remains, even if the exercise of police power may cause a loss to the individual. *Id.* The Court then held that:

"[T]he City Council found that the licensing and inspection of rooming houses, multiple family dwellings or combinations thereof was required to protect the public health, safety, morals and general welfare. Such a finding is entitled to great weight and courts will not ordinarily interfere to enjoin the enforcement of an ordinance embodying such precepts unless it is shown that the ordinance is arbitrary or unreasonable."

*McBriety,* 219 Md. at 232, 148 A.2d at 414.

One of the arguments advanced by the owners of the properties in *McBriety* was that the privacy of the lessees would be infringed by the regulation, which required inspections of the premises. The Court, although in dicta, addressed that argument in a manner which is relevant here:

"The argument advanced by the owners—which they claim was ignored by the chancellor—to the effect that the privacy of a lessee is not subject to regulation (a truth which the defendants-appellees do not even contest), overlooks the fact that *it is the operators, who engage in the business of leasing multiple family dwellings, that are subjected to regulation by the terms of the ordinance, and not the tenants who lease from them.* Moreover, it is not likely that a tenant would object to an occasional inspection of his place of abode for health, fire and other hazards."

*Id.* at 233, 148 A.2d at 414–15 (emphasis added).

Petitioners argue that the County Code as applied violates the Due Process Clause of the United States and the Maryland Constitutions.[16] In their view, the Board acted in an arbitrary, capricious, and unduly oppressive manner, when it held them responsible for the acts of the tenants, over whom—they argue—they have no control. It is fundamentally unfair, petitioners claim, to cite the property owner and manager for the acts of a third party. Petitioners contend that the Board's interpretation would require the owner or manager to inspect the premises, determine what constitutes a violation, and then "order" the tenant to correct the condition. They further point out that "if the [petitioners] were to undertake such inspections and advise the tenants regarding such fire safety issues, the [petitioners] could be subject to significant civil liability for giving inaccurate or incomplete

---

**16.** The Due Process Clause of the federal Constitution is part of the Fourteenth Amendment, which states: "nor shall any State deprive any person of life, liberty, or property, without due process of law."

The Maryland Constitution Due Process Clause is stated in Article 24 of the Declaration of Rights: "no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." This Court has recognized for a long time that this clause generally is interpreted in the same manner as the Due Process Clause of the Fourteenth Amendment. *Bowie Inn, Inc. v. Bowie*, 274 Md. 230, 235 n. 1, 335 A.2d 679, 683 n. 1 (1975).

advice in a highly technical and specialized field in which the [petitioners] have no special training or expertise."

In response to these arguments, the County explains that the County Code as applied bears a "substantial relation to the health, morals, safety, and welfare of the citizens of this state." That, in citing the owners and property managers, the County is exercising its police power. This practice, the County contends, is not arbitrary, capricious, or unduly burdensome because it does not require the owners or managers to become fire experts, conduct their own investigations, or issue correction orders. It simply requires the owner to ensure that the buildings meet the code requirements and to remedy any conditions found by the County to violate those requirements.

The owners and managers, furthermore, are not automatically fined for the first finding of violations—in the case *sub judice* there were no fines levied even after the third notice was issued. After the first notice, the landlord is always in the position of correcting the condition for which he, she, or it was cited.

There is no evidence to show that the statute is being inappropriately administered. The owners and managers of rental properties, the lessees of rental properties, the public, and the County, have an interest in ensuring that their buildings are safe. Interestingly, petitioner Kane during his testimony to the Board stated: "so long as the tenant does not disturb other tenants, the tenant[']s matters do not spill over in the common areas, what the tenant does behind that door, as far as I'm concerned, is the tenant's business." Mr. Kane fails to acknowledge that other tenants, at the least, will be disturbed and the problem will necessarily spill over into the common areas, if there is a fire. The statute, as applied, does not ask the landlord to inspect or even monitor every tenant's actions. It primarily requires that, upon notification of a violation, the landlord must ensure that the violation is corrected. This is not unreasonable. Additionally—as pointed out in *McBriety*—only the landlords are required to obtain a license to rent their properties, which subjects them to regular

inspections under the County Code, as a result it is them who should most reasonably be cited for the violations found during the inspections.

## C. Equal Protection

██ Petitioners contend that the County Code, as applied, violates the Equal Protection Clause of the United States Constitution and Article 24 of the Maryland Declaration of Rights.[17] It is clear that petitioners are not members of a suspect class and that the County Code does not infringe upon a fundamental right requiring the application of strict scrutiny analysis.[18] *See Md. Green Party v. Md. Bd. of Elections,* 377 Md. 127, 161, 163, 832 A.2d 214, 234–35 (2003) (holding that a

---

**17.** The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." We have previously recognized that " '[a]lthough Article 24 does not contain an express equal protection clause, the concept of equal protection nevertheless is embodied in the Article.' " *Frankel v. Bd. of Regents of the Univ. of Md. System,* 361 Md. 298, 312–13, 761 A.2d 324, 332 (2000) (quoting *Renko v. McLean,* 346 Md. 464, 482, 697 A.2d 468, 477 (1997)); *Christopher v. Montgomery County Dep't of Health and Human Servs.,* 381 Md. 188, 216 n. 17, 849 A.2d 46, 62 n. 17 (2004); *Md. Green Party v. Md. Bd. of Elections,* 377 Md. 127, 157, 832 A.2d 214, 231 (2003); *State Admin. Bd. of Election Laws v. Bd. of Supervisors of Elections,* 342 Md. 586, 594 n. 6, 679 A.2d 96, 100 n. 6 (1996); *Md. Aggregates Ass'n, Inc. v. State,* 337 Md. 658, 672 n. 8, 655 A.2d 886, 893 n. 8 (1995), *cert denied,* 514 U.S. 1111, 115 S.Ct. 1965, 131 L.Ed.2d 856 (1995); *Verzi v. Balt. County,* 333 Md. 411, 417, 635 A.2d 967, 969–70 (1994); *Kirsch v. Prince George's County,* 331 Md. 89, 96, 626 A.2d 372, 375 (1993), *cert. denied,* 510 U.S. 1011, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993); *Bruce v. Director, Dep't of Chesapeake Bay Affairs,* 261 Md. 585, 600 n. 4, 276 A.2d 200, 208 n. 4 (1971).

**18.** The Supreme Court of the United States has found that any classification by race, alienage, or national origin, is suspect and must be evaluated under a strict scrutiny standard. *Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *see also Johnson v. Cal.,* 543 U.S. 499, ——, 125 S.Ct. 1141, 1146, 160 L.Ed.2d 949 (2005)(racial classification); *Gratz v. Bollinger,* 539 U.S. 244, 270, 123 S.Ct. 2411, 2427, 156 L.Ed.2d 257 (2003) (same). In addition, this Court has recognized that "there are classifications which have been subjected to a higher degree of scrutiny than the traditional and deferential rational basis test, but which have not been deemed to involve suspect classes or fundamental rights and thus have not been

classification affecting the right to vote is afforded a higher level of scrutiny); *Verzi v. Balt. County*, 333 Md. 411, 418, 635 A.2d 967, 970 (1994) (holding that purely territorial or geographical classifications are subject to a rational basis inquiry); *Kirsch v. Prince George's County*, 331 Md. 89, 98, 626 A.2d 372, 376 (1993); *Massage Parlors, Inc. v. Mayor and City Council of Balt.*, 284 Md. 490, 496, 398 A.2d 52, 56 (1979).

 The County's practice of citing the owners and managers of rental properties and not the tenants concerns two distinct classes of individuals: the cited landlords/managers and the tenants who caused the condition or violation. This classification—not involving a fundamental right or a suspect class—is subject to a rational basis analysis: it must "bear a rational relation to or rest upon some ground of difference having a fair and substantial relation to a legitimate state objective." *Massage Parlors*, 284 Md. at 496–97, 398 A.2d at 56; *Md. Green Party*, 377 Md. at 161, 832 A.2d at 234; *Verzi*, 333 Md. at 419, 635 A.2d at 971; *Kirsch*, 331 Md. at 98, 626 A.2d at 376; *Md. State Bd. of Barber Examiners v. Kuhn*, 270 Md. 496, 507, 312 A.2d 216, 222 (1973). The Court, explaining this principle, has stated:

" 'The constitutional need for equal protection does not shackle the legislature. It has the widest discretion in

---

subjected to the strict scrutiny test. Included among these have been classifications based on gender (*Mississippi University For Women v. Hogan*, 458 U.S. 718, 723, 102 S.Ct. 3331, 3335, 73 L.Ed.2d 1090, 1097 (1982); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971)), discrimination against illegitimate children under some circumstances (*Weber v. Aetna Casualty & Surety Company*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968)), a classification between children of legal residents and children of illegal aliens with regard to a free public education (*Plyler v. Doe*, 457 U.S. 202, 217–218, 224, 102 S.Ct. 2382, 2395, 2398, 72 L.Ed.2d 786, 799–800, 803 (1982)), and a classification under which certain persons were denied the right to practice for compensation the profession for which they were qualified and licensed (*Attorney General v. Waldron*, [289 Md. 683, 716–728, 426 A.2d 929, 947–954 (1981)] )."
*Murphy v. Edmonds*, 325 Md. 342, 357, 601 A.2d 102, 109 (1992) (footnote omitted).

classifying those who are to be regulated and taxed. Only if the grouping is without any reasonable basis, and so entirely arbitrary, is it forbidden. Abstract symmetry or mathematical nicety are not requisites. The selection need not depend on scientific or marked differences in things or persons or their relations. If any state of facts reasonably can be conceived that would sustain a classification, the existence of that state of facts as a basis for the passage of the law must be assumed. The burden is on him who assails a classification to show that it does not rest on any reasonable basis.' "

*Bruce*, 261 Md. at 601–02, 276 A.2d at 209 (quoting *Allied Am. Mutual Fire Ins. Co. v. Comm'r of Motor Vehicles*, 219 Md. 607, 623, 150 A.2d 421, 431 (1959)); *see also Harden v. Mass Transit Admin.*, 277 Md. 399, 354 A.2d 817 (1976).

The County's purpose to ensure the safety and welfare of its citizens is an appropriate objective of government. As stated by the Court of Special Appeals in its opinion in this case: "The Board found that the purpose of subtitle 11 was to eliminate quickly and efficiently any dangerous condition likely to contribute to a fire by serving the person who was most likely to correct it." The only point in controversy is whether the classification bears a substantial relationship to that purpose. The answer to that question is twofold. First, landlords have, at the very least, an interest in the property they own, which gives them leverage. More importantly, however, they should have an interest in the safety of the tenants who inhabit those buildings. It is landlords who are most likely to ensure that the conditions are remedied.

Furthermore, the owners can be readily identified through a search of the land records. Petitioners contend that the tenant should be cited at least when the tenant allows the inspectors to enter the premises. There is no guarantee, however, that the person answering the door is the actual tenant or has any responsibility or interest in the property. The second reason why it is reasonable to cite the landlords is that, as stated in *McBriety supra*, it is the landlords who are subject to regulation. The landlords are required to obtain a

license in order to rent, and are subject to the fire inspections as a result of that license. Accordingly, it is reasonable to cite them for the alleged violations of the County Code.

Finally, petitioners argue that the Court of Special Appeals incorrectly shifted the County's burden of proving all the elements of the violation. Petitioners contend that they did not bear the burden of producing a lease showing that they did not have control over their tenants. As stated above, the statute does not require that the owners be responsible for the violations in order to be charged. As a result, there is no requirement to show that the landlords could exercise control over their tenants. The exercise of control only comes into play upon the petitioners challenge to the statute, and as the Supreme Court of the United States has stated:

"Legislative classifications, however, are presumed to be constitutional, and the burden of showing a statute to be unconstitutional is on the challenging party, *not* on the party defending the statute: 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.' "

*New York State Club Ass'n, Inc. v. New York,* 487 U.S. 1, 17, 108 S.Ct. 2225, 2236, 101 L.Ed.2d 1 (1988) (quoting *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979).) The Court of Special Appeals correctly noticed petitioners' failure to meet their burden of proving that the statute was unconstitutionally applied to them.

For the reasons stated above, we here affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.**