**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| INFAB HOLDCO, INC., an Indiana corporation, INFAB INTERMEDIATE HOLDINGS, LLC, an Indiana limited liability company, HOLDTHIS, a Nevada corporation, and INFAB, LLC, a Nevada limited liability company, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | C.A. No. 2022-0050-KSJM |
| DONALD J. CUSICK, and THE DONALD J. CUSICK AND CAROLYN F. CUSICK FAMILY TRUST 2007, | ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |
| DONALD J. CUSICK, and THE DONALD J. CUSICK AND CAROLYN F. CUSICK FAMILY TRUST 2007, | ) ) ) ) | |
| Counterclaim-Plaintiffs, | ) ) | |
| v. | ) ) | |
| INFAB HOLDCO, INC. and INFAB INTERMEDIATE HOLDINGS, LLC, | ) ) ) | |
| Counterclaim-Defendants. | ) ) | |

**ORDER RESOLVING CROSS MOTIONS FOR SUMMARY JUDGMENT**

In April 2020, Don Cusick sold his family's companies (collectively, "Infab" or

"Plaintiffs")[1] to the private equity firm Hammond Kennedy & Whitney ("HKW")

---

[1] Plaintiffs are Infab Holdco, Inc.; Infab Intermediate Holdings, LLC; holdthis; and Infab, LLC.

pursuant to a stock purchase agreement. The parties agreed that a portion of the consideration would be in the form of earnout payments. Cusick stayed on with Infab after the transaction closed. Infab later terminated Cusick's employment and filed this action asserting a host of contract, tort, and statutory claims against Cusick, trusts and entities affiliated with him, and one former employee loyal to him (collectively, "Defendants").[2] Cusick and two entities through which he holds Infab shares asserted a multitude of contract and tort counterclaims against two of the Plaintiffs.[3] The parties cross moved for partial summary judgment and the court held oral argument on January 10, 2025.[4] With the aim of efficiency and without much throat clearing, this Order resolves the cross motions.

## I. LEGAL ANALYSIS

"Under Court of Chancery Rule 56, summary judgment may be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[5] "There is no right to a summary judgment."[6] "Even

---

[2] Defendants are Donald J. Cusick and The Donald J. Cusick and Carolyn F. Cusick Family Trust 2007.

[3] Although there is not total overlap, this decision calls the Counterclaim Plaintiffs "Defendants" and the Counterclaim Defendants "Plaintiffs" for ease of reference only.

[4] C.A. No. 2022-0050-KSJM, Docket ("Dkt.") 329 ("Pls.' Opening Br."); Dkt. 333 ("Defs.' Opening Br."); Dkt. 389 (Oral Arg. Transcript).

[5] *Steward Health Care Sys. LLC v. Tenet Bus. Servs. Corp.*, 2023 WL 5321484, at *9 (Del. Ch. Aug. 18, 2023) (cleaned up); *see also LVI Gp. Invs., LLC v. NCM Gp. Hldgs., LLC*, 2019 WL 7369198, at *22 (Del. Ch. Dec. 31, 2019) (discussing summary judgment considerations specific to fraud and breach of contract claims).

[6] *Stone & Paper Invs., LLC v. Blanch*, 2020 WL 6373167, at *1 (Del. Ch. Oct. 30, 2020) (quoting *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002)) (internal quotation marks omitted).

2

where the facts are not in dispute, a court may decline to grant summary judgment where a more thorough exploration of the facts is needed to properly apply the law to the circumstances."[7] "When an ultimate fact to be determined is one of motive, intention or other subjective matter, summary judgment is ordinarily inappropriate."[8] The court may "decline to decide the merits of the case in a summary adjudication where it is not reasonably certain that there is no triable issue."[9]

"Summary judgment is particularly appropriate in a dispute over an unambiguous contract because there is no need to resolve material disputes of fact."[10] The proper interpretation of language in a contract is a question of law.[11] According to the Delaware Supreme Court, "a contract is only ambiguous when the provisions in controversy are reasonably or fairly susceptible to different interpretations or may

---

[7] *In re Tri-Star Pictures, Inc., Litig.*, 1995 WL 106520, at *5 (Del. Ch. Mar. 9, 1995); *see also In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 2014 WL 2768782, at *9 (Del. Ch. June 12, 2014) ("[T]he court may, in its discretion, deny summary judgment if it decides upon a preliminary examination of the facts presented that it is desirable to inquire into and develop the facts more thoroughly at trial in order to clarify the law or its application." (citing *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 792 A.2d 1141, 1150 (Del. 2002) and *Alexander Indus., Inc. v. Hill,* 211 A.3d 917, 918–19 (Del. 1965)).

[8] *Cont'l Oil Co. v. Pauley Petroleum, Inc.*, 251 A.2d 824, 826 (Del. 1969); *see also Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*, 2009 WL 3756700, at *4 (Del. Ch. Nov. 9, 2009) (citing *Johnson v. Shapiro,* 2002 WL 31438477, at *4 (Del. Ch. Oct. 18, 2002)).

[9] *Unbound P'rs Ltd. P'ship v. Invoy Hldgs. Inc.*, 251 A.3d 1016, 1024 (Del. Super. Ct. 2021) (cleaned up) (quoting *Parexel Int'l (IRL) Ltd. v. Xynomic Pharms., Inc.*, 2020 WL 5202083, at *4 (Del. Super. Ct. Sept. 1, 2020)) (interpreting parallel rule of the Delaware Superior Court).

[10] *XO Commc'ns, LLC v. Level 3 Commc'ns, Inc.*, 948 A.2d 1111, 1124 (Del. Ch. 2007) (quoting *NBC Universal, Inc. v. Paxson Commc'ns Corp.*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005) (internal quotation marks omitted)).

[11] *Pellaton v. Bank of N.Y.,* 592 A.2d 473, 478 (Del. 1991) (quoting *Klair v. Reese*, 531 A.2d 219, 222 (Del. 1987)).

have two or more different meanings."[12] In addition, "ambiguity does not exist where the court can determine the meaning of a contract without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends."[13] If ambiguity exists, then courts "may consider extrinsic evidence to resolve the ambiguity."[14]

The parties have cross-moved for summary judgment on the following Counts of Plaintiffs' Verified Amended Complaint[15] and Defendants' Counterclaims[16]:

- Count I for "Actual and Intentional Fraud" and Count VII for Breach of the Stock Purchase Agreement's representations and warranties (together, the "Representations and Warranties Claims");

- Counts III through VI for Breach of Fiduciary Duties to each of the four Plaintiffs (the "Fiduciary Duty Claims");

- Count I of Defendants' Counterclaim alleging that the Infab counterparty to the Stock Purchase Agreement ("Infab Intermediate") breached the Stock Purchase Agreement by failing to make the earnout payment.

Defendants have moved for partial summary judgment on the following Counts of Plaintiffs' Verified Amended Complaint:

- Count X for Misappropriation of Trade Secrets (the "Trade Secret Claims");

- Count II for Conversion (the "Conversion Claim");

---

[12] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288 (Del. 2001) (citing *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.,* 616 A.2d 1192, 1196 (Del. 1992)).

[13] *Id.* (quoting *Rhone–Poulenc Basic Chems. Co.,* 616 A.2d at 1196) (internal quotation marks omitted).

[14] *Salamone v. Gorman*, 106 A.3d 354, 374 (Del. 2014) (citation omitted).

[15] Dkt. 51 ("Am. Compl.").

[16] Dkt. 65 ("Defs.' Answer").

- Count VIII for Violation of the Computer Fraud and Abuse Act (the "Computer Fraud Claim"); and

- Count IX seeking a declaratory judgment concerning Defendants' rights to an earnout payment under the Stock Purchase Agreement (with Count I of Defendants' Counterclaims, the "Earnout Claims").

- Count VII for breach of the restrictive covenants (the "Restrictive Covenant Claims").

This Order addresses the parties' cross-motions on the Earnout Claims, Fiduciary Duty Claims, and Representations and Warranties Claims, and then turns to Defendants' motion for summary judgment on the Trade Secret Claims, Conversion Claim, Computer Fraud Claim, and Restrictive Covenant Claims.

## A.    Earnout Claims

The parties have cross-moved for summary judgment on the Earnout Claims. Under Section 2.06 of the Stock Purchase Agreement, Cusick is entitled to an earnout of $3 million if Infab's Actual 2020 EBITDA was at least $8 million, plus an additional $1.33 for each dollar over the $8 million threshold. Cusick's maximum earnout was $5 million.[17]   Under the earnout provision, Infab must calculate the Actual 2020 EDITDA based on its 2020 audited financial statements and disclose its calculation to Cusick.[18]

---

[17] Dkts. 329–332, Transmittal Affidavit of Philip Trainer, Jr. ("Trainer Aff."), Ex. 10 ("SPA") § 1.01 (definition of "Target 2020 EBITDA"); *id.* § 2.06(f); *see also* Pls.' Opening Br. at 8.

[18] SPA § 1.01 (definition of "Audited 2020 Financial Statements"); *id.* § 2.06(a).

5

On May 1, 2021, Infab issued an earnout statement that concluded that Infab's Actual 2020 EBITDA was $8,432,071.[19] Based on the statement, Cusick was entitled to a $3,574,654 earnout payment under Section 2.06(a).[20] After receiving the statement, Cusick had forty-five days to provide written notice to Infab that he disagreed with Infab's calculation.[21] Had he done so, and the parties failed to resolve the dispute within forty-days, the matter would have been submitted to independent accountants to resolve.[22] Cusick did not object and indicated his agreement with the calculation.[23] He also agreed to wait to execute the earnout statement.[24]

According to Plaintiffs, however, beginning in the summer of 2021—after the deadline for objecting to the earnout statement had passed—Infab discovered that Cusick owned the largest vendor on Infab's vendor list.[25] Plaintiffs launched an investigation into Cusick's actions. Through the investigation, Plaintiffs learned that Cusick allegedly orchestrated a false inventory count to reach the earnout threshold by instructing employees to, for example, shrink-wrap empty boxes.[26] Cusick created a shell company that posed as an Infab supplier to markup Infab invoices, the

---

[19] Dkts. 333–342, 359, 374, Transmittal Affidavit of Ryan M. Ellingson ("Ellingson Aff."), Ex. 51 at Infab1576061.

[20] *Id.*; SPA § 2.6(a).

[21] *Id.* § 2.06(b).

[22] *Id.* §§ 2.06(d), (e).

[23] Ellingson Aff., Ex. 52.

[24] *Id.*

[25] Pls.' Opening Br. at 14.

[26] *Id.* at 2, 14, 16–20, 46.

6

proceeds of which Cusick pocketed.[27] And Cusick reversed transaction-related bonuses from Infab's payroll and paid them out of a different Cusick-controlled entity to inflate Infab's EBITDA.[28] These and other allegations form the basis of Plaintiffs' Fraud and Representation and Warranties Claims. According to Plaintiffs, these allegations also provide a basis for denying Cusick the earnout payment. When Plaintiffs' auditor removed fraud, the Actual 2020 EBITDA was under the $8 million threshold that would entitle Cusick to an earnout payment.[29]

Defendants have moved for summary judgment on the Earnout Claims on two grounds. First, they say that the earnout statement was final and binding and cannot not be challenged, despite the allegedly later-detected fraud.[30] Defendants argue that, in this situation, the Stock Purchase Agreement mandates that Infab's initial calculation "shall be deemed to be final and correct and shall be binding upon each of the parties hereto."[31] Second, they say that Plaintiffs cannot avoid making the earnout payment based on Cusick's prior material breach because Plaintiffs seek to enforce other aspects of the Stock Purchase Agreement—the restrictive covenants.

---

[27] *Id.* at 23–24.

[28] *Id.* at 26–33.

[29] Trainer Aff., Ex. 44 at 25 (concluding the adjusted 2020 EBITDA is $7,316,583).

[30] Defs.' Opening Br. at 35–36.

[31] SPA § 2.06(c); Defs.' Opening Br. at 63 (citing *GreenStar IH Rep, LLC v. Tutor Perini Corp.*, 2017 WL 5035567, at *5–7 (Del. Ch. Oct. 31, 2017), *aff'd*, 186 A.3d 799 (Del. 2018) and *B&C Hldgs., Inc. v. Temperatsure Hldgs., LLC*, 2020 WL 1972855, at *12–14 (Del. Super. Ct. Apr. 22, 2020), *aff'd*, 247 A.3d 686 (Del. 2021) (TABLE) (finding "final and binding" language determinative)).

Plaintiffs respond that Cusick is only entitled to an earnout if he can show that the actual EBITDA was greater than $8 million, which he has zero evidence of.

Plaintiffs have also moved for summary judgment on Count I of Defendants' Counterclaim. They argue that the claim for breach of the earnout provision is barred by the prevention doctrine, because Cusick's alleged fraud prevented Plaintiffs from timely calculating the true 2020 EBITDA and determining entitlement to the earnout.[32]

Neither side is entitled to summary judgment on the Earnout Claims. If Cusick's fraud or breach of representations and warranties inflated the Actual 2020 EBITDA to the earnout threshold, regardless of whether Plaintiffs seek to enforce other aspects of the Stock Purchase Agreement, then Cusick is not entitled to the earnout. None of the authorities on which Cusick relies involved allegations of actual fraud designed to inflate the earnout statement by a party to the contract.[33] Here, material, disputed facts foreclose summary judgment on the question of whether Cusick committed fraud and the consequence of that fraud.

### B. Representations And Warranties Claims

The parties have cross-moved for summary judgment on the Representations and Warranties Claims. Plaintiffs argue that there is no material, factual dispute as

---

[32] Dkt. 375 ("Pls.' Reply Br.") at 5–6.

[33] *See Greenstar IH Rep.,* 2017 WL 5035567, at *6–12 (granting judgment on the pleadings where the defendant's fraud claims concerned a non-party's conduct); *B&C Hldgs.*, 2020 WL 1972855, at *7–15 (granting summary judgment where the parties disputed which calculation would form the basis of the earnout due to accounting errors, rather than actual fraud).

to any elements of their claims. Defendants argue that Plaintiffs' fraud claim should be dismissed because there is no evidence that Defendants acted with the requisite intent or that Plaintiffs justifiably relied on the representations and warranties in the Stock Purchase Agreement. Defendants argue that Plaintiffs' breach of contract claim should be dismissed because it is untimely under the unambiguous terms of the Stock Purchase Agreement. Defendants argue that both claims should be dismissed because Plaintiffs have not suffered non-speculative damages due to the alleged fraud and failed to use commercially reasonable efforts to seek recovery under the representations and warranties policy as required under the Stock Purchase Agreement.

### 1. Actual Fraud (Count I)

In Count I of the Complaint, Plaintiffs alleged that Defendants committed "Actual Fraud" by "engag[ing] in undisclosed schemes to compensate [certain Infab employees] in a manner that violated applicable law and was intended to unlawfully circumvent applicable tax laws," and then made intentionally false representations and warranties in the Stock Purchase Agreement.[34]

The Stock Purchase Agreement defines "Actual Fraud" as "an actual and intentional fraud (excluding constructive and negligent fraud) with respect to the making of the representations and warranties . . . in accordance with Delaware law."[35]

---

[34] Am. Compl. ¶¶ 46, 168–177.

[35] SPA § 1.01 (definition of "Actual Fraud").

9

To prevail on their claim for Actual Fraud, Plaintiffs must show:

> (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false . . . ; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.[36]

Plaintiffs have made a factual argument under each of these elements and argue that there is no material factual dispute precluding judgment in their favor.[37] Defendants argue that Plaintiffs cannot prove many of these elements. They say that even if Plaintiffs were able to establish that certain representations were inaccurate, there is no evidence in the record to support claims that (i) Defendants knew or believed the representations were false, (ii) Defendants made the false representations intending to induce Plaintiffs to act, (iii) Plaintiffs justifiably relied on those representations, and (iv) Plaintiffs suffered non-speculative damages as a result of those representations. Defendants also argue that Plaintiffs failed to use commercially reasonable efforts to seek recovery under the representations and warranties policy as required under the Stock Purchase Agreement.

---

[36] *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *32 (Del. Ch. Dec. 3, 2018); *accord Swipe Acq. Corp. v. Krauss*, 2020 WL 5015863, at *9 (Del. Ch. Aug. 25, 2020); *see also* Defs.' Opening Br. at 37; Pls.' Opening Br. at 50.

[37] Pls.' Opening Br. at 51–57.

Suffice it to say, the parties' respective arguments rest on material disputed facts that raise triable issues. Neither side is entitled to summary judgment on Count I of the Complaint.

## 2. Breach Of Contract (Count VII)

Defendants seek partial summary judgment on Count VII. Specifically, they seek summary judgment on Plaintiffs' claim for breach of the representations and warranties in the Stock Purchase Agreement on the ground that they did not survive closing. Plaintiffs did not respond to this argument in briefing and therefore waived this aspect of their claim.[38] Defendants also win on the merits of their argument.

"Delaware courts have interpreted contractual provisions that limit the survival of representations and warranties as evidencing an intent to shorten the period of time in which a claim for breach of those representations and warranties may be brought, *i.e.*, the statute of limitations."[39] "Parties can contract for representations to survive closing by incorporating a survival clause in the transaction agreement."[40]

---

[38] *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.") (citations omitted).

[39] *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *12 (Del. Ch. July 11, 2011) (citing *Sterling Network Exch., LLC v. Digital Phoenix Van Buren, LLC,* 2008 WL 2582920, at *1 (Del. Super. Ct. Mar. 28, 2008), *Campanella v. Gen. Motors Corp.,* 1996 WL 769769, at *1 (Del. Super. Ct. Nov. 6 1996), and *Strange v. Keiper Recaro Seating, Inc.*, 117 F. Supp.2d 408, 410–11 (D. Del. 2000)).

[40] *Bear Stearns Mortg. Funding Tr. 2006-SL1 v. EMC Mortg. LLC*, 2015 WL 139731, at *14 (Del. Ch. Jan. 12, 2015) (citing *GRT, Inc.*, 2011 WL 2682898, at *14).

11

According to Defendants, Plaintiffs did not contract for the representations or warranties to survive the closing of the Infab sale. Instead, the survival clause in the Stock Purchase Agreement expressly provides that "[a]ll representations and warranties made by [Defendants] . . . shall expire at the Closing and be of no further force and effect."[41] Plaintiffs did not bring their claim for breach of the representations and warranties before the sale closed.[42] They waited until after, when the representations and warranties have no further force or effect. Defendants thus seek summary judgment on Count VII as to breaches of representations and warranties.

Plaintiffs respond that Defendants' argument reads the Stock Purchase Agreement too narrowly, and that Section 9.01(a) entitles Plaintiffs to reimbursement for "any and all [l]osses incurred" by "any breach or non-fulfillment of any covenant, agreement or obligation made or to be performed by" Cusick.[43] They further note that Section 9.02(c) states that all the covenants and agreements are

---

[41] SPA § 9.03(a).

[42] *See, e.g.*, *Pilot Air Freight, LLC v. Manna Freight Sys., Inc.*, 2020 WL 5588671, at \*16–26 (Del. Ch. Sept. 18, 2020) (dismissing the plaintiff's breach of representations and warranties claim as untimely after it failed to bring the claim within the survival period but allowing a fraud claim to survive).

[43] SPA § 9.01(a), (a)(i).

enforceable until fully performed.[44]   Plaintiffs therefore conclude Cusick must pay

Plaintiffs "for any breaches of any covenant."[45]   This argument does not work.

Sections 9.01(a) and 9.02(c) generally allow for Plaintiffs to collect damages for

breaches of the covenants in the Stock Purchase Agreement, but these contractual

rights are limited by the rest of the contract.   Under Delaware law, where two sections

of a contract appear to conflict, the more specific provision will govern.[46]   Thus,

Section 9.01(a) and 9.02(c) are qualified by, rather than replace, the representations

and warranties expiration provision.[47]   Furthermore, allowing Plaintiffs to recover on

the representations and warranties would render the expiration provision

superfluous, which is an impermissible interpretation of contract language.[48]

---

[44] *See id.* § 9.03(c) ("All covenants and agreements set forth herein shall survive the execution and delivery of this Agreement and the Closing, and shall be enforceable, until fully performed in accordance with their respective terms.").

[45] *See* Pls.' Reply Br. at 29–30.

[46] *Thompson Street Cap. P'rs. IV, L.P. v. Sonova U.S. Hearing Instruments, LLC,* --- A.3d ---, 2025 WL 1213667, at *8 (Del. 2025) ("Delaware courts follow the maxim that the general does not detract from the specific.   This principle of contract interpretation dictates that where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one. This principle can be thought of as reading the specific as an exception to the general, which allows a harmonizing of otherwise conflicting provision[s]." (quoting *Nucor Coatings Corp. v. Precoat Metals Corp.,* 2023 WL 636831, at *10 (Del. Super. Ct. Aug. 31, 2023) (internal quotation marks omitted)).

[47] *Id.* ("[W]e have recognized that general terms of the contract must yield to more specific terms.") (quoting *Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019) (internal quotation marks omitted)).

[48] *See Osborn ex rel. Osborn v. Kemp,* 991 A.3d 1153, 1159 (Del. 2010) (noting that Delaware courts read a contract "as a whole and . . . will give each provision and term effect, so as not to render any part of the contract mere surplusage" (quoting *Kuhn Const., Inc. v. Diamond State Port. Corp.*, 990 A.3d 393, 396–97 (Del. 2010)); *see also GRT, Inc.,* 2011 WL 2682898, at *13 ("[A]ll the major commentaries agree that by

13

Because Plaintiffs failed to bring a claim for breach of the representation and warranties prior to closing, they have lost the ability to enforce these provisions.[49] Defendants are entitled to partial summary judgment on Count VII.[50]

## C. Breach Of Fiduciary Duty Claims

The parties have cross-moved for summary judgment on the Breach of Fiduciary Duty Claims. Counts III to VI of the Complaint relate to Defendants' alleged violations of fiduciary duties owed to each of the four Infab companies in connection with Sterilux and Defendants' use of Infab employees for other business interests.[51] Although not alleged in Counts III to VI of the Complaint, Plaintiffs have suggested that Defendants also breached their fiduciary duties due to Cusick's connection with Infab suppliers ClearShield[52] and Kemmetech,[53] and potential competitor Imaging Solutions.[54]

---

expressly terminating representations and warranties at closing, the parties have made clear their intent that they could provide no basis for a post-closing suit seeking a remedy for an alleged misrepresentation.").

[49] SPA § 9.03(a) (mandating that the representations and warranties have "no further force or effect" after closing); *see also Online HealthNow, Inc. v. CIP OCL Invs. LLC,* 2021 WL 3557857, at *18 (Del. Ch. Aug. 12, 2021) ("To be clear, the clause serves its purpose—there can be no post-closing claim for breach of a warranty that did not survive closing.").

[50] This conclusion is not dispositive as to Count VII, as Plaintiffs raise an alternative theory of liability that is discussed in more detail in the "Restrictive Covenants Claim" section of this order. *See infra* Section II.G.

[51] Am. Compl. ¶¶ 192, 202, 212, 221.

[52] *Id.* ¶¶ 95–106.

[53] *Id.* ¶¶ 161–167.

[54] *Id.* ¶¶ 123–160.

Defendants first argue that they are entitled to summary judgment under Delaware law on the Fiduciary Duty Claims because they are duplicative of the contract claim. This argument does not work, even if Delaware law applies, because Defendants' fiduciary duties do not arise from the Stock Purchase Agreement. They arise from his former role as an officer, manager, and director of Infab and are premised on his conduct in those capacities. (Plaintiffs also say that they arise from his role as a minority stockholder, discussed next.) The Fiduciary Duty Claims are not fatally duplicative of the claim for breach of contract.[55] Defendants are not entitled to summary judgment on the Fiduciary Duty Claim on this ground.

Defendants next argue that Defendants did not owe fiduciary duties during the period of challenged conduct, which occurred after Cusick's termination. Plaintiffs say that this issue is governed by Indiana law because Infab Parent is an Indiana entity. They also argue that the challenged conduct occurred before and after Cusick's termination.

The parties' dispute over Indiana law requires further development. According to Plaintiffs, Cusick owes a fiduciary duty to Infab Parent under Indiana law so long as Cusick is a stockholder. And because he was a stockholder during the relevant period, he owed fiduciary duties. Defendants say that the legal principle on which Plaintiffs rely applies only to close corporations. The court does not purport to be an expert on Indiana law. And the claims for breach of fiduciary duty are factually rife.

---

[55] *See generally Grayson v. Imagination Station, Inc.*, 2010 WL 3221951, at *7 (Del. Ch. Aug. 16, 2010) (quoting *PT China LLC v. PT Korea LLC*, 2010 WL 761145, at *7 (Del. Ch. Feb. 26, 2010)).

15

Because a further exploration of the legal framework and factual record would be helpful, Defendants' motion for summary judgment as to the Fiduciary Duty Claims is denied.

The parties' dispute on the timeframe of the alleged wrongdoing depends on proof of the alleged wrongdoing. This hinges on material disputed facts. Neither side is entitled to summary judgment on the Fiduciary Duty Claims.

### D. Trade Secret Claim

Count X seeks an injunction preventing Cusick from possessing, accessing, misappropriating, or sharing Infab confidential information and trade secrets.

Defendants move for summary judgment on this claim to the extent Plaintiffs seek damages because Plaintiffs' damages expert declined to opine on any damages relating to this claim. Plaintiffs do not dispute this assertion; they argue instead that they are not seeking damages for Count X. Defendants respond that Plaintiffs did not specifically seek injunctive relief for Count X in the Complaint and should be precluded from doing so now. But Plaintiffs' Amended Complaint includes a general prayer for "permanent injunctive relief."[56] That is sufficient to put Defendants on notice.[57]

---

[56] Am. Compl., Prayer for Relief ¶¶ 3–4.

[57] *See Trifecta Multimedia Hldgs. Inc. v. WCG Clinical Servs. LLC,* 318 A.3d 450, 469 (Del. Ch. 2024) (noting that Delaware has adopted the federal notice pleading standard where "it is unnecessary to set out a legal theory for the plaintiff's claim of relief" and "particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not" (quoting *Gins v. Mauser Plumbing Supply Co.,* 148 F.2d 974, 976 (2d Cir. 1945)).

Defendants also argue that the Trade Secret Claim is duplicative of the claim for breach of contract, citing to *Nemec v. Shrader*.[58] That case is distinguishable. There, the plaintiffs challenged the defendant company's redemption of their shares under the company's stock rights plan prior to a lucrative sale. The redemption netted additional consideration for the company, but caused the retired stockholders to lose out on the considerable value they would have gotten had they participated in the sale. The retired stockholders sued, asserting three claims: an implied covenant claim, a breach of fiduciary duties claim against the company's directors, and an unjust enrichment claim against the directors. This court dismissed the complaint.[59]

The Delaware Supreme Court affirmed. The high court held that the fiduciary breach claim was superfluous because it arose out of the same facts underlying the plaintiffs' contract claims.[60] It reasoned the fiduciary duty claim arose solely out of a contractual right and "[a]s a consequence, the nature and scope of the Directors' duties when causing the Company to exercise the right to redeem shares covered by the Stock Plan were intended to be defined solely by reference to that contract."[61] In contrast, Plaintiffs' Trade Secrets Claims arise out of statute and are therefore not foreclosed by the Stock Purchase Agreement's provisions governing confidentiality. Also, as Defendants acknowledge, the Superior Court has already rejected a similar

---

[58] 991 A.2d 1120 (Del. 2010).

[59] *Id.* at 1123–25.

[60] *Id.* at 1129.

[61] *Id.*

17

attempt to preempt the Delaware Uniform Trade Secret Act through a contractual provision.[62]

Defendants are not entitled to summary judgment on Count X.

### E.    Conversion Claim

In Count II of the Complaint, Plaintiffs allege that Defendants converted computers that Cusick temporarily retained after leaving his employment at Infab as well as "profits and other monies of Infab" in connection with Sterilux.[63]  Defendants moved for summary judgment on this claim.

As to the computers, Defendants argue that Plaintiffs have already obtained the maximum relief they could expect to receive at trial, and the issue is moot. Plaintiff did not respond to this argument in briefing.

As to the "profits and other monies of Infab," "[g]enerally, an action in conversion will not lie to enforce a claim for the payment of money."[64]  While "other jurisdictions have recognized a narrow exception" to this general rule when the converted money "can be described or identified as a specific chattel," "an action for conversion of money will lie only where there is an obligation to return the identical money delivered by the plaintiff to the defendant," "not where an indebtedness may

---

[62] *See* Dkt. 374 (Defs.' Reply Br.) at 33 n.88 (citing *GWO Litig. Tr. v. Sprint Sols. Inc.,* 2018 WL 5309477, at *8–9 (Del. Super. Ct. Oct. 25, 2018)).

[63] *See* Am. Compl. ¶¶ 178–184.

[64] *Kuroda v. SPJS Hldgs.*, 971 A.2d 872, 890 (Del. Ch. 2009) (citing *Carlton Invs. V. TLC Beatrice Int'l Hldgs., Inc.,* 1995 WL 694397, at *16 (Del. Ch. Nov. 21, 1995) and *Goodrich v. E.F. Hutton Gp., Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988)).

be discharged by the payment of money generally."[65]  Defendants argue that the Amended Complaint does not identify any specific monetary chattel, and Plaintiffs declined to clarify this issue during discovery.[66]  Plaintiffs did not respond to this argument in briefing.

By failing to address Defendants' arguments as to the Conversion Claim in briefing, Plaintiffs waived their opportunity to do so.[67]  Defendants are entitled to summary judgment on Count II.

### F.  Computer Fraud And Abuse Act Claim

In Count VIII of the Complaint, Plaintiffs allege that Cusick violated 18 U.S.C. § 1030(a)(4) by improperly retaining and using certain computers after his employment with Infab ceased.[68]

According to Defendants, to prevail on a claim under the Computer Fraud and Abuse Act, Plaintiffs must prove (among other things) (i) that Cusick knowingly used the computers with the intent to defraud, (ii) he did so in order to further a fraud or obtain a thing of value greater than $5,000 during a one-year period, and (iii) that Plaintiffs suffered economic damages greater than $5,000 during a one-year period

---

[65] *Id.* (citations and internal quotation marks omitted).

[66] *See* Am. Compl. ¶¶ 180–181; Ellingson Aff., Ex. 103 at 14 (Response to Interrogatory No. 19).  Plaintiffs' response to this interrogatory suggested that they intended to identify the specific chattel in expert discovery.  However, the Friedland Report is silent on the issue.  *See id.*, Ex. 102.

[67] *Emerald P'rs v. Berlin*, 726 A.2d at 1224.

[68] Am. Compl. ¶¶ 242–250.

19

that was caused by Defendants' unauthorized use.[69]  Defendants argue that Plaintiffs have failed to proffer evidence sufficient to raise a disputed fact as to multiple of these elements.  Plaintiffs did not respond to this argument in briefing.

By failing to address Defendants' arguments as to the Computer Fraud Claim in briefing, Plaintiffs waived their opportunity to do so.[70]  Defendants are entitled to summary judgment on Count VIII.

## G.     Restrictive Covenant Claims

In Count VII of the Complaint, Plaintiffs allege that Cusick breached the restrictive covenants in Section 7 of the Stock Purchase Agreement.[71]  They allege Cusick breached Section 7.01 (the "Confidentiality Covenant") by using confidential information to cause Sterilux, a Cusick-owned supplier, to overcharge Infab and encouraging former employees to work at Imaging Solutions.[72]  They also allege Cusick breached Section 7.02(a) (the "Non-Competition Covenant") and Section 7.02(b) (the "Non-Solicitation Covenant") by permitting one or more of his affiliates to hire former Infab employees; working with Imaging Solutions, a would-be Infab competitor; and disrupting Infab's relationships with suppliers.[73]  Plaintiffs seek summary judgment as to Cusick's liability for these alleged breaches.

---

[69] Defs.' Opening Br. at 61.

[70] *Emerald P'rs v. Berlin*, 726 A.2d at 1224.

[71] Am. Compl. ¶¶ 236–239.

[72] *Id.* ¶ 236; Pls.' Reply Br. at 30.

[73] Pls.' Reply Br. at 31–34.

Defendants do not dispute the enforceability of the restrictive covenant provisions. Rather, they argue that Plaintiffs have not met their evidentiary burden as to these claims.

To prevail on a claim for breach of contract, a party must establish the existence of a contract, the breach of an obligation of that contract, and harm or damage resulting from the breach.[74] Defendants make two arguments against summary judgment in Plaintiffs' favor. First, they argue that Plaintiffs have not provided sufficient evidence of breach of the Confidentiality Covenant. Second, they argue that there are material facts in dispute precluding summary judgment on the alleged breaches of the Non-Solicitation and Non-Competition Covenants.[75] The court need not address Defendants' first argument, because the second is dispositive.

Under the Confidentiality Covenant, Cusick must "hold in confidence any and all information, documents, instruments and Contracts, whether written or oral, of, relating to or concerning the Company or the Subsidiary[.]"[76] There are material, factual disputes as to whether Plaintiffs have demonstrated this element.[77]

There are material, factual disputes precluding summary judgment as to the other restrictive covenants as well, although the motions present a closer call. Under the Non-Competition Covenant, Cusick is barred from "directly or indirectly"

---

[74] *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

[75] Dkt. 359 ("Defs.' Answering Br.") at 57–63.

[76] SPA § 7.01.

[77] *See* Pls.' Opening Br. at 62–63; Defs.' Answering Br. at 57–59.

21

"interfer[ing] with or attempt[ing] to interfere with, the business relationships" between Infab "and any customers or suppliers of the Company or the Subsidiary" for a period of five years.[78] Under the Non-Solicitation Covenant, Cusick is barred from "directly or indirectly" hiring former Infab employees during the same five-year period.[79] Plaintiffs have shown Cusick did both.[80]

Defendants argue there are still material factual disputes on these claims, namely whether Plaintiffs have proven harm.[81] In particular, Defendants contend Plaintiffs cannot prove harm because Imaging Solutions was a short-lived venture and Kemmetech raised its prices on all of its customers.[82] Plaintiffs respond that

---

[78] *See* SPA §§ 7.02(a), (a)(iii).

[79] *See id.* § 7.02(b) (mandating that for a five-year period Cusick "shall not, nor shall [he] permit any of [his] respective Affiliates to, directly or indirectly, hire or solicit any employee of the Company or the Subsidiary or encourage any such employee to leave such employment or hire any such employee who has left such employment, except that a general solicitation which is not directed specifically to any such employees shall not be deemed a violation of the foregoing").

[80] *See* Trainer Aff., Ex. 57 (Nov. 4, 2021 email where Cusick connects former Infab employees with an Imaging Solutions representative); 58 (Nov. 11, 2021 email arranging a meeting between former Infab employees and an Imaging Solutions representative); Ex. 59 (Nov. 24, 2021 group text where Cusick recommends Imaging Solutions to former Infab employees); Ex. 60 (Dec. 8, 2021 email where Cusick discusses Imaging Solutions opportunity with former Infab employees); Ex. 61 (Dec. 12, 2021 where Cusick discusses investing in Imaging Solutions); 62 (Dec. 24, 2021 where Cusick discusses investing in Imaging Solutions); Ex. 66 (Jan. 12, 2022 email where Cusick encourages a former Infab employee to share Infab customer contact information with Imaging Solutions).

[81] Defs.' Answering Br. at 59–63.

[82] *Id.*

they have shown breach and that is sufficient.[83]  Defendants have the better argument here.

Under Delaware law, a showing of harm is a prerequisite for a finding of liability on Plaintiffs' claim for injunctive relief.[84]  To satisfy this element, "the plaintiff must show both the existence of damages provable to a reasonable certainty, and that the damages flowed from the defendant's violation of the contract."[85] Plaintiffs argue that they have made a sufficient showing of harm through their damages expert and that his testimony is unrebutted.[86]  But Defendants still have the opportunity to challenge the credibility of Plaintiffs' expert and the soundness of his conclusions at trial.[87]  Also, disputes over Imaging Solutions's competitive impact and Kemmetech's pricing are material to the assessment of harm.  Plaintiffs have not shown harm as a matter of law, and they are therefore not entitled to summary judgment on Count VII.

---

[83] Pls.' Reply Br. at 33.

[84] *Base Optics Inc. v. Liu*, 2015 WL 3491495, at *13 (Del. Ch. May 28, 2015).

[85] *Id.* at *16 (quoting *In re El Pavo Pipeline P'rs L.P. Deriv. Litig.,* 2015 WL 1815846, at *25 (Del. Ch. Apr. 20, 2015)) (internal quotation marks omitted).

[86] Pls.' Reply Br. at 34.

[87] *See id.* ("Infab intends to prove its damages and the relief to which it is entitled as a result of those breaches at trial.").

## II. CONCLUSION

Summary Judgment is entered in favor of Defendants on Counts II and VIII. Partial summary judgment is entered in Defendants' favor on Count VII. Neither party is entitled to summary judgment on the remaining counts.

_/s/ Kathaleen St. Jude McCormick_
Chancellor
Dated: May 19, 2025